WOODS *v.* EDGEWATER AMUSEMENT PARK.

1. COURTS—JURISDICTION OVER FOREIGN CORPORATION—TORTS—LONG
ARM STATUTE.
   The transaction of any business within the State or the doing or
   causing of any act to be done or consequences to occur in this
   State, resulting in an action for tort, constitutes sufficient basis
   of jurisdiction to enable a court to render personal judgments
   against a corporation arising out of the act which creates such
   a relationship to the State (CLS 1961, § 600.715).

2. SAME—JURISDICTION—LONG ARM STATUTE—MINIMUM CONTACTS.
   Defendant manufacturer of amusement rides satisfied require-
   ments of minimum contacts with this State for purposes of as-
   sertion of personal jurisdiction under long arm statute where,
   in constructing and selling an amusement ride which came to
   be installed in this State and which later injured plaintiff, it
   caused consequences to occur resulting in action for tort in
   this State (CLS 1961, § 600.715).

3. CORPORATIONS—COURTS—SERVICE OF PROCESS—RESIDENT AGENT—
REGISTERED MAIL.
   Service of process on a corporation may be made by mailing a
   summons and a copy of the complaint by registered mail to
   the corporation and to the Michigan corporation and securities

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  36 Am Jur 2d, Foreign Corporations § 365 *et seq.*
   Power of state to subject foreign corporation to jurisdiction of its
   courts on sole ground that corporation committed tort within
   state.   25 ALR2d 1202.
   Construction and application of state statutes or rules of court
   predicating in personam jurisdiction over nonresidents or foreign
   corporations on making or performing a contract within the state.
   23 ALR3d 551.
[3]  36 Am Jur 2d, Foreign Corporations § 538.
[4]  50 Am Jur, Statutes §§ 223, 305.
[5]  20 Am Jur 2d, Courts § 82 *et seq.*
[6]  36 Am Jur 2d, Foreign Corporations § 521,

commission where the corporation has failed to appoint and maintain a resident agent or file certificate of such appointment as required by law (CLS 1961, § 600.1920).

4. STATUTES—REVISED JUDICATURE ACT—CONSTRUCTION.
    The revised judicature act is remedial in character and is to be liberally construed to effectuate the intents and purposes thereof (CLS 1961, § 600.102).

5. COURTS—SUPREME COURT—COURT RULES—SERVICE OF PROCESS—CORPORATIONS—INTENT.
    Supreme Court in repeating phrasing of statute in court rule dealing with service of process on corporations by registered mail gave no indication of an intent that that rule should not be as liberally construed as the statute from which it was taken (CLS 1961, § 600.1920; GCR 1963, 105.4).

6. SAME—SERVICE OF PROCESS—FOREIGN CORPORATIONS.
    Service of process by registered mail upon defendant Florida corporation was proper to obtain jurisdiction under court rule since neither the court rule nor the statute from which it was taken limit service of summons and complaint by registered mail to corporations required to appoint a resident agent (CLS 1961, § 600.1920; GCR 1963, 105.4).

Appeal transferred from Court of Appeals to Supreme Court from Wayne, Bohn (Theodore R.), J. Submitted November 14, 1968. (Calendar No. 12, Docket Nos. 51,686, 51,687.) Decided March 3, 1969.

Complaint in No. 51,686 by Margaret Woods, next friend of Margaret Jo Delle Woods, a minor, and Randell Woods against Edgewater Amusement Park, Inc., a Michigan corporation, Leo Pike, Stahl Enterprises, Inc., a Michigan corporation, and B. A. Schiff & Associates, Inc., a Florida corporation, for medical expenses occasioned by injuries to minor plaintiff sustained on an amusement ride. Complaint in No. 51,687 by Margaret Jo Delle Woods against B. A. Schiff Associates, Inc., a Florida corporation, for personal injuries so sus-

tained.   Defendant B. A. Schiff Associates, Inc.,
moved to quash service in both actions.   Motions
denied.   Cases consolidated for appeal.   Defendant
B. A. Schiff Associates, Inc., appealed to Court of
Appeals.   Appeal transferred to Supreme Court.
Affirmed.

*Davidson, Gotshall, Kelly, Halsey & Kohl (Graff
Kennelly,* of counsel), for plaintiff.

*Samuel W. Barr,* for defendant B. A. Schiff
Associates, Inc.

KELLY, J.   The motion to quash of defendant B.
A. Schiff & Associates, Inc., a Florida corporation
(hereinafter referred to as defendant Schiff), was
denied by the Wayne county circuit court and de-
fendant Schiff's appeal to the Court of Appeals was
transferred to this Court.

Appellant claims: (1) that it was not subject to
the jurisdiction of the Wayne county circuit court
under the "long arm statute" of the State of Mich-
igan;[1] and (2) that plaintiffs did not obtain jurisdic-
tion under GCR 1963, 105.4, by service of a copy
of the summons and second amended complaint
(June 5, 1963) by registered mail upon defendant
Schiff in Florida (return receipt dated June 10,
1963) and, also, on the Michigan Corporation &
Securities Commission (return receipt dated June
7, 1963).

Plaintiffs' second amended complaint (action No.
1) alleged that defendant Schiff manufactured at
its Florida place of business an amusement park
ride known as the "Wild Mouse," and installed said
ride at Edgewater Amusement Park, Detroit, Mich-
igan; that the defendant Edgewater Amusement

---

[1] CLS 1961, § 600.715 (Stat Ann 1962 Rev § 27A.715).

Park is a Michigan profit corporation and operated, within the county of Wayne, Edgewater Park; that defendant Stahl Enterprises, Inc., a Michigan corporation, owned and operated Edgewater Amusement Park, and that Leo Pike, another defendant, owned and operated the ride that was called the "Wild Mouse"; that defendant Schiff owed a duty to the plaintiffs to manufacture, design, and construct the amusement device in a careful and workmanlike manner so that it would operate correctly, and that said defendant breached its duty in this regard; that all above named defendants jointly and severally owned and operated the "Wild Mouse," which on June 18, 1960, was operated in a negligent manner, resulting in personal injuries to plaintiff Margaret Jo Delle Woods, who, for a consideration, rode the "Wild Mouse."

Defendant-appellant Schiff appeared specially for the purpose of filing its motion to quash service and claimed in the motion that it was not amenable to service under the aforementioned court rule inasmuch as it had never at any time had any employees in the State of Michigan, did business in Michigan, or transacted any business in Michigan.

An affidavit attached to the motion set forth that defendant Schiff manufactured and sold the "Wild Mouse" to a Roger Haney in the State of New Jersey for installation at Haslett, Michigan; that said Roger Haney sold said amusement ride to Harry Stahl, individually, and in July 1959, and subsequently as an accommodation to Roger Haney who had purchased said ride on installment contract, B. A. Schiff & Associates, Inc., refinanced the ride at the Coral Gables First National Bank in Coral Gables, Florida, to assist Harry Stahl to acquire same. The affidavit further set forth that defendant Schiff never made a sale to Stahl Enterprises, Inc., one of the defendants herein, or Edgewater Amuse-

ment Park, or Leo Pike, the other two defendants, and had nothing to do with the installation and did not assist in the installation of the "Wild Mouse" at the place where the minor plaintiff contends she was injured.

After the above mentioned June 1963 service, plaintiffs served a new summons (in action No. 1) dated March 13, 1964, under the "long arm statute" and 1963 General Court Rules, by the sheriff of Dade county, Florida, upon defendant Schiff. This second summons was not a duplicate of the previous June 5, 1963, summons, and defendant Schiff again filed a motion to quash on the ground that it had no minimal contacts in Michigan and, therefore, was not subject to Michigan jurisdiction.

Before decision was made by the trial court (action No 1), the minor plaintiff, who had attained her majority, filed her individual action (action No 2) against defendant Schiff solely, and personal service was made on said defendant in Florida on August 29, 1964.

## Question No. 1.

"Is the defendant, B. A. Schiff & Associates, Inc., a Florida corporation, subject to the jurisdiction of the Wayne county circuit court, in this action, under the 'long arm statute' of the State of Michigan?"

This "long arm statute" (CLS 1961, § 600.715 [Stat Ann 1962 Rev § 27A.715]) was given effect as of January 1, 1963, and reads in part:

"The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judg-

ments against such corporation arising out of the act or acts which create any of the following relationships:

"(1) The transaction of any business within the state.

"(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort."

We quote with approval from the appellant's brief:

"The application of a State statute permitting service on a foreign corporation is limited by constitutional requirements of due process as interpreted by the United States Supreme Court. * * * The test of due process, in ultimate simplicity, is: how far can a State go in extending its jurisdiction over a foreign corporation?

"To reach this determination, courts have considered the evolution of *in personam* jurisdiction on nonresidents from *Pennoyer* v. *Neff* (1877), 95 US 714 (24 L Ed 565), through the leading cases of *International Shoe Co.* v. *Washington* (1945), 326 US 310 (66 S Ct 154, 90 L Ed 95, 161 ALR 1057); *McGee* v. *International Life Ins. Co.* (1957), 355 US 220 (78 S Ct 199, 2 L Ed 2d 223); and *Hanson* v. *Denckla* (1958), 357 US 235 (78 S Ct 1228, 2 L Ed 2d 1283)."

*Pennoyer* v. *Neff* (1877), *supra,* declared that a State did not have jurisdiction over a nonresident defendant unless service of process was personally served upon the defendant within the forum State.

Sixty-eight years later, the United States Supreme Court established a new jurisdictional test over a nonresident defendant in *International Shoe Co.* v. *Washington* (1945), *supra,* and in this decision abandoned the "consent" and "presence" theories of earlier decisions and adopted the new test—Did the defendant have such "minimum contacts" with plain-

tiff's State that maintenance of the action would not offend "traditional notions of fair play and substantial justice?"

In *McGee* v. *International Life Ins. Co.* (1957), *supra,* the Supreme Court approved the previous *International Shoe Company* jurisdictional test and explained the expansion of the permissible scope of State jurisdiction by calling attention to the fundamental transformation of our national economy over the years and the expansion of modern transportation and communication, thus making it much less burdensome for the nonresident defendant to resist a plaintiff's claims.

The final approval of the *International Shoe Company* decision is found in *Hanson* v. *Denckla* (1958), *supra,* and appellant quotes therefrom as follows:

"It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (p 253)

"But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of State courts.  *  *  *  Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation.  They are a consequence of territorial limitations on the power of the respective States.  However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." (p 251)

Appellant, after stating that *"International Shoe, supra,* gives no specific pronouncement of what is meant by 'minimum contacts,' " cited Federal district court and State court decisions to support its contention that minimum contacts mean something

more than one contact and under the heading "Conclusion" (Question 1) states:

"In the principal cases, plaintiffs have offered no proofs to counter the affidavit offered by defendant B. A. Schiff to the effect that it has had no contact with Michigan other than the one isolated sale of the 'Wild Mouse' to a person other than the owner of the 'Wild Mouse' on the date of the alleged injury; that the B. A. Schiff company had nothing to do with the installation of the device at Edgewater Park; and that the sale of the device would be the only connection of the company with Michigan, which sale occurred in 1958, approximately two years before the alleged incident for which damages are claimed.   *   *   *

"The only evidence before this Court, or the trial court, indicates a lack of any but a bare, isolated contact between B. A. Schiff and Michigan some six years before the 'long arm' statute was given existence."

Appellee calls attention to the United States Supreme Court case of *McGee* v. *International Life Ins. Co., supra,* and State supreme court cases holding that a single transaction is sufficient to meet the "minimum contacts" test, and contends that defendant Schiff's refinancing of the ride when Haney sold to Harry Stahl shows defendant's systematic and continuous contact with the State of Michigan from the time defendant first installed the ride in Michigan up to the time plaintiff Margaret Jo Delle Woods was injured.

In the *McGee Case,* the United States Supreme Court considered a judgment awarded by a California State court, service of process being made by registered mail on defendant, a Texas corporation, that did not have an office in California, and whose sole business activity in California was confined to the issuing by mail of an insurance policy to plain-

tiff's son.  The United States Supreme Court upheld
the California court's decision that the "minimum
contact" test had been met, and stated (p 223):

"Turning to this case we think it apparent that
the due process clause did not preclude the Califor-
nia court from entering a judgment binding on
respondent.  It is sufficient for purposes of due
process that the suit was based on a contract which
had substantial connection with that State.  [Citing
cases.]  The contract was delivered in California,
the premiums were mailed from there and the in-
sured was a resident of that State when he died.
It cannot be denied that California had a manifest
interest in providing effective means of redress for
its residents when their insurers refuse to pay
claims.  These residents would be at a severe dis-
advantage if they were forced to follow the insur-
ance company to a distant State in order to hold
it legally accountable.  When claims were small or
moderate individual claimants frequently could not
afford the cost of bringing an action in a foreign
forum—thus in effect making the company judg-
ment proof.  Often the crucial witnesses—as here
on the company's defense of suicide—will be found
in the insured's locality."

A similar question was recently considered by the
Illinois supreme court.[2]  In its decision, the court
set forth the facts as follows (p 434):

"The suit was brought against the Titan Valve
Manufacturing Company and others, on the ground
that a certain water heater had exploded and injured
the plaintiff.  The complaint charges, *inter alia,* that
the Titan company, a foreign corporation, had neg-
ligently constructed the safety valve; and that the
injuries were suffered as a proximate result thereof.
Summons issued and was duly served on Titan's

---

[2] *Gray* v. *American Radiator and Standard Sanitary Corporation*
(1961), 22 Ill 2d 432 (176 NE2d 761).

registered agent in Cleveland, Ohio.   The corporation appeared specially, filing a motion to quash on the ground that it had not committed a tortious act in Illinois.   Its affidavit stated that it does no business here; that it has no agent physically present in Illinois; and that it sells the completed valves to defendant, American Radiator & Standard Sanitary Corporation, outside Illinois."

We quote with approval excerpts from the Illinois supreme court's reversal of the trial court's grant of Titan's motion to quash (pp 440–443):

"The trend in defining due process of law is away from the emphasis on territorial limitations and toward emphasis on providing adequate notice and opportunity to be heard: from the court with immediate power over the defendant, toward the court in which both parties can most conveniently settle their dispute. * * *

"As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products.   Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines.   By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States. * * *

"The principles of due process relevant to the issue in this case support jurisdiction in the court where both parties can most conveniently settle their dispute.   The facts show that the plaintiff, an Illinois resident, was injured in Illinois.   The law of Illinois will govern the substantive questions, and witnesses on the issues of injury, damages and other elements relating to the occurrence are most likely to be found here.   Under such circumstances the

courts of the place of injury usually provide the most convenient forum for trial.  (See *Watson* v. *Employers Liability Assurance Corp.* [1954], 348 US 66, 72 [75 S Ct 166, 99 L Ed 74].)"

The question of "minimal contact" depends upon the particular facts in each case.  The record presented in this appeal satisfies the Michigan statutory requirement that defendant Schiff has transacted business within the State, causing an act to be done or a *consequence to occur* resulting in the present actions for tort.

Our answer to Question No. 1: Defendant B. A. Schiff & Associates, Inc., a Florida corporation, is subject to the jurisdiction of the Wayne county circuit court in these actions under the "long arm statute" of the State of Michigan (CLS 1961, § 600.715 [Stat Ann 1962 Rev § 27A.715]).

## Question No. 2.

"Was service in Florida upon defendant B. A. Schiff & Associates, Inc., a Florida corporation, by registered mail in suit numbered 1867 [action No 1] (Service No 1) proper to obtain jurisdiction under Michigan Court Rule (1963) 105.4?"

In regard to Question No. 2, appellee calls attention that in the original action service was made personally upon defendant Schiff in Florida, in addition to service by registered mail.

If we hold under Question No. 1 that the Wayne county circuit court had jurisdiction, appellant's issue is not as to the service made *personally* upon defendant Schiff in either action No. 1 (against defendant Schiff and other named defendants) or action No. 2 (against defendant Schiff solely).  Appellant emphasizes this point in its brief under the heading "Conclusion" (Question 2) as follows:

[Mar.

"The importance of this motion [to quash service] is great. Assuming that, for some reason, this defendant is kept in the principal action in this State, it would have the defense of the statute of limitations as against any adult plaintiffs, since a second service [personal service] was not properly made on B. A. Schiff until after three years from the date of the alleged injury."

GCR 1963, 105.4 and CLS 1961, § 600.1920 (Stat Ann 1962 Rev § 27A.1920) are identical, and read in part as follows:

"Service of process upon a corporation, whether domestic or foreign, may be made by * * *

"(4) mailing a summons and a copy of the complaint by registered mail to the corporation or an appropriate corporation officer and to the Michigan corporation and securities commission if:

"(a) the corporation has failed to appoint and maintain a resident agent or to file a certificate of such appointment as by law required; or

"(b) the corporation has failed to keep up its organization by the appointment of officers or otherwise, or the term of whose existence has expired by limitation."

In the title to the revised judicature act of 1961 (PA 1961, No 236), the legislature provided that it was:

"An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state,"

and in the second section of that act, under the heading "Construction of act," it is said:

"This act is remedial in character, and shall be liberally construed to effectuate the intents and purposes thereof." CLS 1961, § 600.102 (Stat Ann 1962 Rev § 27A.102).

This Court, in repeating CLS 1961, § 600.1920 verbatim in GCR 1963, 105.4, gave no indication that there was any intention of disagreeing with the legislative mandate of liberal construction.

Neither the court rule nor the statute limits service of summons and complaint by registered mail to corporations that are required to appoint a resident agent, and we do not agree with appellant that, because in *Dratz* v. *Occidental Hotel Company* (1949), 325 Mich 699, we held that simple and discontinuous acts or contracts do not constitute carrying on a business within the meaning of the statute there involved,[3] GCR 1963, 105.4 applies only to a corporation which is required to, but has failed to appoint a resident agent or obtain a certificate to do business.

Our answer to Question No. 2 is that the service in Florida upon defendant B. A. Schiff & Associates, Inc., a Florida corporation, by registered mail in action No. 1 (service No. 1) was proper to obtain jurisdiction under GCR 1963, 105.4.

Affirmed. Costs to appellees.

T. E. BRENNAN, C. J., and DETHMERS, BLACK, T. M. KAVANAGH, and ADAMS, JJ., concurred.

T. G. KAVANAGH, J., took no part in the decision of this case.

---

[3] CL 1948, § 450.93 (Stat Ann § 21.94).