SHEPLER *v.* KORKUT

1. COURTS—JURISDICTION—PERSONAL JURISDICTION—NONRESIDENTS—STATUTES.

Limited personal jurisdiction over a nonresident person or corporation may be exercised by a Michigan court where the nonresident or an agent transacts any business within the state, does or causes any act to be done or consequences to occur in this state resulting in an action for tort, or enters into a contract for services to be rendered or for materials to be furnished in the state, and the court may render a personal judgment against the nonresident arising out of the acts which create any of these relationships (MCLA §§ 600.705, 600.715).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts §§ 118–121, 143–146.
[2] 20 Am Jur 2d, Courts § 146.
[3] 20 Am Jur 2d, Courts §§ 126, 146.
[4] 20 Am Jur 2d, Courts §§ 143, 146.

2. COURTS—JURISDICTION—PERSONAL JURISDICTION—NONRESIDENTS—
   MINIMUM CONTACTS.

   A Michigan court has jurisdiction over a nonresident defendant
   if the defendant had such minimum contacts with this state
   that maintenance of an action against him in Michigan would
   not offend traditional notions of fair play and substantial
   justice; the essential element in each case is that there be
   some act by which the nonresident defendant purposely availed
   himself of the privilege of conducting activities within this
   state, thus invoking the benefits and protection of state laws
   (MCLA §§ 600.705, 600.715).

3. COURTS—JURISDICTION—PERSONAL JURISDICTION—NONRESIDENTS—
   MINIMUM CONTACTS.

   A resident's contract action against a nonresident defendant for
   purposes of due process when applying a long-arm statute, re-
   quires only that the contract have a substantial connection with
   the state of the forum; a single transaction may be sufficient
   to meet the minimum contacts test since the forum state may
   have a manifest interest in providing effective means of re-
   dress for its residents, considering not only the particular cir-
   cumstances of the case but also that the crucial witnesses may
   be its residents (MCLA §§ 600.705, 600.715).

4. COURTS—JURISDICTION—PERSONAL JURISDICTION—NONRESIDENTS—
   MINIMUM CONTACTS.

   Nonresident defendants who designed a boat for plaintiff for
   the purpose of ferrying passengers on Michigan waters, who
   sent their product, the design, into this state for integration
   into the boat to be constructed in this state, and whose design
   was an integral part of the boat, controlling its use and opera-
   tion within the state, maintained sufficient minimum contacts
   with this state to enable a state court to exercise personal
   jurisdiction over them in plaintiff's action against them for
   fraud, breach of warranty and breach of contract (MCLA §§
   600.705, 600.715).

Appeal from Cheboygan, Edward H. Fenlon, J.
Submitted Division 3 October 6, 1970, at Grand
Rapids. (Docket No. 7992.) Decided May 18,
1971.

Complaint by William H. Shepler against Mehmet
D. Korkut, Korkut Engineers, Inc., Thomas D.

Vinette, and Emerson J. Kidd for fraud, breach of contract and breach of warranty. Defendants Korkut and Korkut Engineers moved for accelerated judgment. Motion denied. Defendants Korkut and Korkut Engineers appeal. Affirmed.

*Crane, Kessel & Crane,* for plaintiff.

*Veum & Veum,* for defendants Korkut and Korkut Engineers, Inc.

Before: HOLBROOK, P. J., and R. B. BURNS and J. J. KELLEY, JR.,* JJ.

KELLEY, J. Claiming fraud, breach of warranty and breach of contract, plaintiff alleged in his complaint: he operated a passenger service ferry between Mackinaw City and Mackinac Island, Michigan; he needed an additional boat capable of carrying a large number of passengers at a certain speed; he entered into a contract with defendants Vinette and Kidd for construction thereof; he engaged the services of defendants Korkut and Korkut Engineers, Inc., of the State of Louisiana, as architects, to design the boat; the resulting boat did not operate due to faulty design and construction.

In their motion for accelerated judgment under GCR 1963, 116.1, defendants Korkut challenge the Michigan court's jurisdiction over them.

One of our "long-arm" statutes, MCLA § 600.705 (Stat Ann 1962 Rev § 27A.705), provides:

"The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdic-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion to enable the courts of record of this state to exercise limited personal jurisdiction over such individual and to enable such courts to render personal judgments against such individual or his representative arising out of the act or acts which create any of the following relationships:

"(1)  The transaction of any business within the state.

"(2)  The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

\*    \*    \*

"(5)  Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant."

Another such statute, MCLA § 600.715 (Stat Ann 1962 Rev § 27A.715), provides that the existence of any of these same three relationships between a corporation or its agent and the state is a sufficient basis to enable these courts to exercise limited personal jurisdiction over such corporation and to render personal judgments against such corporation arising out of the act or acts which create any of the three relationships.

Jurisdiction exists if defendants Korkut had such "minimum contacts" with this state that maintenance of the action would not offend traditional notions of fair play and substantial justice. *International Shoe Co.* v. *Washington* (1945), 326 US 310 (66 S Ct 154, 90 L Ed 95). It is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Hanson* v. *Denckla* (1958), 357 US 235 (78 S Ct 1228, 2 L Ed 2d 1283).

It is sufficient for purposes of due process that the suit be based on a contract which had a substantial connection with the state of the forum. A single transaction may be sufficient to meet the "minimum contacts" test. The state of the forum may have a manifest interest in providing effective means of redress for its residents, considering the particular circumstances of the case and that the crucial witnesses may be its residents. *McGee* v. *International Life Ins. Co.* (1957), 355 US 220 (78 S Ct 199, 2 L Ed 2d 223).

The trend in defining due process is toward the court in which both parties can most conveniently settle their dispute. *Gray* v. *American Radiator and Standard Sanitary Corporation* (1961), 22 Ill 2d 432 (176 NE2d 761).

Whether the required "minimal contacts" exist depends upon the particular circumstances of each case. *Woods* v. *Edgewater Amusement Park* (1969), 381 Mich 559, 569.

We turn now to a consideration of the circumstances in the case before us. In support of their motion defendants Korkut, residents of Louisiana, submitted the following by way of affidavit:

"During the month of September, 1966, William H. Shepler came to the office of Korkut Engineers, Inc. at 3225 Danny Park, Metairie, Louisiana, to discuss the designing of a 'water taxi'. A verbal agreement was entered into in Metairie, Louisiana under which Korkut Engineers, Inc. prepared design and engineering drawings for the vessel which was subsequently named 'Mein Kapitan'. After preparation of all design drawings and engineering drawings and calculations was done in Metairie, Jefferson Parish, Louisiana, the defendant, Korkut Engineers, Inc. was paid in Metairie, Jefferson Parish, Louisiana for its services."

In his answering affidavit plaintiff stated:

"defendants, Mehmet D. Korkut and Korkut Engineers, Incorporated, were recommended by Thomas D. Vinette and that the building of the 'water taxi' was a joint undertaking of the defendants; that defendants were fully advised that the boat would carry passengers for hire between Mackinac Island and Mackinaw City, Michigan, and that the vessel, including all plans, materials, and so forth, would require submission and approval by the Department of Transportation, United States Coast Guard Marine Inspection, St. Ignace, Michigan; that as a part of the contract of the defendants with this plaintiff they agree to secure approval of the Department of Transportation, United States Coast Guard Marine Inspection at St. Ignace, Michigan; that said defendants, including Mehmet D. Korkut and Korkut Engineers, Incorporated, were in constant contact with the Officer in Charge Marine Inspection, St. Ignace, Michigan, and plaintiff has numerous reports of defendants' contacts in writing during December 1966, January 1967, March 1967, May 1967, June 1967 and August 1967, which will be introduced at time of trial; that said defendants were in person in the State of Michigan attempting to get approval of the Officer in Charge Marine Inspection, St. Ignace, Michigan, and said approval was never obtained by the defendants which was a part of the contract, and their failure in the design and construction of said boat also was a negligent act and tort as charged in the complaint. Deponent admits he made visits to the office and yards of the defendants but again states that the contract with Korkut Engineers, Incorporated, was accepted by him by phone call from Mackinaw City, Michigan, shortly prior to the written contract with T. D. Vinette Company at Mackinaw City, Michigan, on December 16, 1966."

The circuit court ruled:

"From a careful consideration of the affidavits on file in support of and in opposition to the said motion, and from a perusal of the cases cited in briefs submitted by respective counsel, the court finds that services personally rendered on behalf of plaintiff by defendant Mehmet D. Korkut in connection with the design of the vessel 'Mein Kapitan' and the suggested corrections thereof made after a personal inspection of the said vessel in Mackinaw City, Michigan by defendant Mehmet D. Korkut, in the opinion of the court, clearly brings the said defendants within the jurisdiction of this court."

On their appeal defendants Korkut proposed, and the circuit judge adopted, the following as part of a concise statement of proceedings and facts:

"The plaintiff is the owner and operator of a ferry boat service which conveys people to and from Mackinac Island, a well-known Michigan tourist resort. The plaintiff is a resident of Cheboygan County, Michigan. Sometime prior to September, 1966, plaintiff was desirous of obtaining a new vessel to add to his existing fleet.

"Defendant Korkut submits that on or about mid-September, 1966, they were initially contacted by Captain William H. Shepler concerning the design of a water taxi for his ferry service from Mackinaw City, Michigan to Mackinac Island across the Straits of Mackinac. The initial contact was made by telephone. Following an initial telephone conversation in mid-September, the defendant Korkut received a letter dated September 26, 1966, from Captain Shepler outlining his requirements. Defendant Korkut then prepared preliminary general arrangement drawings. Captain Shepler then paid the defendant Korkut a personal visit in Louisiana at defendant's offices. During this initial visit, several changes

were made in the general arrangement at Captain Shepler's request.

"Defendant mailed a letter to Captain Shepler dated October 4, 1966, indicating what their fee for the design of the vessel would be and also outlined that drawings and other related work would be included in the fee of $1,900.

"On November 9, 1966, defendant submitted copies of the lines of plan drawings and speed versus horsepower study to Captain Shepler for his approval and recommendation. On December 6, 1966, the defendant Korkut submitted preliminary structual drawings to Captain Shepler. Additional drawings and recommendations were made through March 8, 1967, when the United States Coast Guard issued approval of those drawings submitted on February 7, 1967, subject to their comments.

"It is alleged by the plaintiff that on or about December 16, 1966, the plaintiff and the T. D. Vinette Company entered into a contract to construct and equip a 59-foot water taxi. For the purposes of this appeal, defendants will assume that these dates were correct. Construction of the vessel began sometime on or about the first of February, 1967, at the defendant T. D. Vinette Company's shipyard located in Escanaba, Michigan.

"Construction of the vessel progressed through July 28, 1967, when the vessel was delivered by the defendant T. D. Vinette to the plaintiff at Mackinaw City, Michigan and had a Coast Guard temporary certificate.

"That on July 30, 1967, the vessel owned by the plaintiff and known as 'Mein Kapitan' commenced regular operations between Mackinaw City and Mackinac Island.

"Plaintiff alleges that various defects and structural problems arose which would not permit him to operate the boat as he had originally contemplated. Numerous calls were made to Korkut Engineers and Mr. Mehmet D. Korkut, president of Korkut

Engineers, Incorporated, journeyed to Mackinaw City on or about August 2, 1967, to view the alleged defects of design and met with the plaintiff and the United States Coast Guard.

"It is admitted that this is the only time the defendant Korkut was present in the State of Michigan, and the defendant Korkut made no charge to the plaintiff for this inspection."

Three essential ingredients went into the construction of the boat: parts, labor and design. The design determined the specifications of the parts and the places and means of holding the parts together. Defendants Korkut designed the boat for the purpose of ferrying passengers within the State of Michigan. These defendants sent into this state their product, the design, for integration into the boat to be constructed here. When construction was completed, design was an integral part of the boat, controlling its use and operation within this state. Plaintiff alleges that the boat's design is faulty and that its use would present a hazard to passengers.

There has been ample showing that the activities of the defendant architects constitute those relationships in the long-arm statutes, hereinbefore enumerated.

Affirmed. Costs to appellee.

All concurred.