**Hyman WEINSTEIN, d/b/a Bright Star Enterprise, an Individual, Plaintiff,**

v.

**NORMAN M. MORRIS CORPORATION, a New York Corporation, Omega Louis Brandt Et Frere S.A. and Societe Suisse Pour L'Industrie Horlogere Management Services, S.A., Confederation of Switzerland Corporation, Defendants.**

**Civ. A. No. 76–71791.**

United States District Court,
E. D. Michigan, S. D.

March 24, 1977.

A. Stewart Kerr, Kerr, Wattles & Russell, Detroit, Mich., for plaintiff.

Michael B. Lewiston, Bodman, Longley, Bogle & Dahling, George E. Ward, Travis, Warren, Nayer & Burgoyne, Detroit, Mich., for defendants.

## OPINION AND ORDER GRANTING DEFENDANTS OMEGA LOUIS BRANDT ET FRERE S.A. AND SOCIETE SUISSE POUR L'INDUSTRIE HORLOGERE MANAGEMENT SERVICES S.A. MOTION TO DISMISS

CORNELIA G. KENNEDY, District Judge.

Defendants Omega Louis Brandt Et Frere S.A. and Societe Suisse Pour L'Industrie Horlogere Management Services S.A., hereinafter referred to as "Omega" and "S.S.I.H." have moved to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(2) and (5), claiming lack of personal jurisdiction. The motion asserts these defendants' absence of contacts with the Eastern District of Michigan and the State of Michigan; it is supported by affidavits of Gerard Mandel-

baum, the defendants' general counsel in the United States.[1]

The plaintiff relies on three bases in asserting that the Swiss defendants are within the reach of personal jurisdiction of this Court.

First, the plaintiff contends that 28 U.S.C. Sec. 1391(d) provides authority for the exertion of personal jurisdiction over the Swiss defendants. This section provides:

An alien may be sued in any district.

■ Section 1391(d), as its title indicates, is a venue statute and not a statute creating personal jurisdiction in federal district courts. The effect of Sec. 1391(d) is to permit a resident plaintiff to bring an action against an alien in any district where valid service can be made upon the alien. See *Olin Mathieson Chemical Corp. v. Molins Organizations, Limited,* 261 F.Supp. 436, 441, 442 (E.D.Va.1966), (action by American patent holder against English manufacturer for infringement, service of process valid under Virginia long-arm statute; alien corporation found to have sufficient contacts with Virginia to permit personal jurisdiction); *Seilon, Inc. v. Brema S.P.A.,* 271 F.Supp. 516 (N.D.Ohio, 1967), (action by an American corporation against three Italian corporations for breach of contract; sufficient contact with Ohio found to validate service of process made under the Ohio long-arm statute). The alien corporation must, however, have sufficient minimum contacts with the forum to satisfy due process requirements. *Seilon, Inc. v. Brema S.P.A.,* 271 F.Supp. at 520; *Olin Mathieson Chemical Corp. v. Molins Organizations, Limited,* 261 F.Supp. at 442.

The plaintiff contends that the decision of the United States Supreme Court in *Brunette Machine Works v. Kockum Industries,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972) supports plaintiff's position that Sec. 1391(d) provides a basis for this Court's exercise of personal jurisdiction over the Swiss defendants. In *Brunette,* an Alabama corporation doing business in Oregon brought an action for patent infringement against a Canadian corporation in an Oregon federal district court. The Canadian defendant moved for dismissal because of improper venue under 28 U.S.C. Sec. 1400(b), which limits civil actions for patent infringement to districts where (1) the defendant resides, or (2) where the defendant has committed acts of infringement *and* has a regular and established place of business.

*Brunette* is, however, clearly distinguishable and inapplicable to the issues in the instant case. Valid service of process had been obtained in that case pursuant to the State of Oregon's long-arm statute. 406 U.S. at 707, 92 S.Ct. 1936. Thus, the issue before the Court in *Brunette* was the propriety of venue in a suit involving an alien where valid service of process could be effected in the forum. The holding of the Court was *not* that Sec. 1391(d) authorized personal jurisdiction over aliens by any district court, but rather that venue would be proper in any district where valid service of process (pursuant to a state long-arm or a federal jurisdictional statute) could be effected on the alien. Thus, *Brunette* in no way involved personal jurisdiction, but rather proper venue, once valid service had been made.

The plaintiff also relies on *Scriptomatic, Inc. v. Agfa-Gevaert, Inc.,* 1973–1 Trade Cas. Paragraph 94,594 (S.D.N.Y.1973). In

---

1. The plaintiff has filed a memorandum in opposition to the defendants' motion for dismissal, and in addition a motion to compel production of documents by the Swiss defendants. This memorandum includes a discussion of background information relating to the Swiss watch industry and to the defendants' involvement (which defendants deny) in prior actions brought by the United States in other states in connection with certain business practices of the industry and the defendants. This discussion also touches on recent United States Supreme Court decisions holding certain types of restrictive distribution practices in violation of federal antitrust laws. Although the information related by the plaintiff in this "background" portion of the memorandum may have some relevance to the substantive issues of the antitrust violation alleged in the Complaint it does not help resolve the procedural issue before this Court, i. e., whether the Swiss defendants are subject to the personal jurisdiction of this Court.

*Scriptomatic,* a Danish corporation was joined as a defendant in a suit by an American corporation for damages resulting from the defendants' alleged violations of the Clayton Act. The Danish corporation, Eskofot, was the manufacturer of offset platemaking devices which were distributed in the United States by another defendant, Agfa-Gevaert, a New York corporation. The plaintiff was engaged in the manufacture of competing offset platemaking devices and had been a national distributor of Agfa's offset platemaking supplies. In 1972, plaintiff Scriptomatic's national distributorship of Agfa supplies was terminated. Scriptomatic alleged that the termination was the culmination of a conspiracy by the defendants to monopolize the offset duplicating equipment and supplies market in the United States. Eskofot moved for dismissal on the basis of lack of personal jurisdiction. In its motion, Eskofot conceded that "if this court finds jurisdiction over its person, venue is proper as to Eskofot as an alien within the meaning of 28 U.S.C. Sec. 1391(d)." 1973 Trade Cas. at p. 94,632.

The issue before the Court in *Scriptomatic* was the validity of service to exert personal jurisdiction over the Danish defendant. 1973–1 Trade Cas. at p. 94,633. The Court recognized that Fifth Amendment due process principles governed its decision:

> . . . Personal jurisdiction over Eskofot may be asserted in this action for alleged violations of Sections 1 and 2 of the Sherman Act "to but, of course, not beyond the bounds permitted by the due process clause of the Fifth Amendment" [citing *Leasco Data Processing Equipment Corporation v. Maxwell,* 468 F.2d 1326, 2d Cir. 1972)]. The Court must therefore inquire whether the moving defendants have "certain minimum contacts with [this forum], such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). 1973–1 Trade Cas. at p. 94,633.

The Court in *Scriptomatic* then discussed Eskofot's activities and contacts with the United States. Eskofot had sold over $1,000,000 worth of its products in the United States, was extremely "close" in terms of contractual relationship with its American distributor so as to suggest substantial control over the operation of the American corporation, and had, through phone conversations to the United States, attempted to "transact business" with the plaintiff in the United States and when this was not successful, allegedly threatened the plaintiff with legal action. 1973–1 Trade Cas. pp. 94,634, 94,635. The court then applied an aggregate contacts test, aggregating all of Eskofot's contacts with the United States and found them sufficient to meet minimum due process requirements. After considering these contacts with the United States, that court stated:

> The court holds that the evidence before the court establishes sufficient contacts of Eskofot with the United States to make it entirely reasonable for the court to assert personal jurisdiction over Eskofot with respect to the federal antitrust and patent claims made by Scriptomatic against it. 1973–1 Trade Cas. p. 94,635.

The basis of the aggregate contacts test, the court reasoned, is that where an alien corporation "transacts business" (within the meaning of 15 U.S.C. Sec. 22) within the United States, its contacts with the United States as a *whole* should be the basis of the due process test of personal jurisdiction. The court held that if an alien corporation has sufficient minimum contacts with the United States as a whole, it follows that an alien may be sued in *any* district in which it has a contact under the venue provisions of Sec. 1391(d). *Scriptomatic* applies a "federal contacts" due process test, rather than a "forum contacts" due process test. However, there was at least some contact with the forum. Defendants' affidavits establish that the Swiss defendants have no contacts with the forum. Further, they establish that defendants have no contacts in any State in the United States which in the aggregate could meet due process requirements.

The second basis upon which plaintiff asserts the validity of the service of process is that the Swiss defendants are "transacting business" within this District and that service is valid under 15 U.S.C. Sec. 22. Plaintiff claims the following activities of the Swiss defendants meet the "transacting business" test:

1. Defendant Omega offers a "direct factory warranty" on its watches sold at retail in the Eastern District of Michigan (as elsewhere in the United States and the world);

2. Defendant Omega has appointed Norman M. Morris Corporation as its exclusive agent in the United States, including the Eastern District of Michigan, to administer its warranty program. Defendant Norman M. Morris Corporation has a full-time agent in this District (apparently *not* solely for the purpose of administering the warranty program);

3. The Swiss defendants have "retained" the Norman M. Morris Corporation to buy up Omega watches sold by the plaintiff to retail jewelers in this District. [But see the earlier action of *Norman M. Morris v. Weinstein,* 466 F.2d 137 (5th Cir. 1972), in which an injunction was granted against plaintiffs' activities in selling altered Omega watches using false descriptions and false representations];

4. The Swiss defendants are alleged to be co-conspirators ("agents") of the defendant Norman M. Morris Corporation in carrying out unlawful trade restrictions;

5. Defendant Omega allegedly exercises considerable control over the exclusive United States distributor, Norman M., Morris Corporation, demonstrated by Omega's holding of U.S. Trademarks and its authorization of Morris to use such trademarks nationwide, including in this District;

6. The Swiss defendants have contractual control over the territories in which Omega watches may be sold in the world, including the United States and this District.

7. The distribution agreement between the Swiss defendants and Morris contains an international arbitration clause which possibly designates the United States as the site of arbitration proceedings;

8. The Swiss defendants, through Morris, prepare and disseminate various promotional materials in this District;

9. The Swiss defendants have appointed an agent in .New York for service of documents pertaining to a consent decree entered by the defendants with the United States on April 16, 1976.

■ Section 12 of the Clayton Act, which is relied on by the plaintiff, recites:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found. 15 U.S.C. Sec. 22.

The broadest basis for personal jurisdiction under this statute is the "transacts business" test. The concept of "transacting business" as used in 15 U.S.C. Sec. 22 is a broader and looser concept than the concept of "doing business" in other statutes. *Riss and Co., Inc. v. Association of American Railroads,* 24 F.R.D. 7, 8 (D.D.C.1959). The appropriate test of whether a corporation is "transacting business" within a district is a "practical, nontechnical, business standard." *United States v. Scophony,* 333 U.S. 795, 810, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). Under any approach, however, it is obvious that due process principles delineate the outer limits of a court's scope of personal jurisdiction. See *International Shoe Co. v. Washington,* 326 U.S. 310, 314, 319–320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ An analysis of the Swiss defendants' alleged transaction of business in this district, even under the most liberal interpretation of 15 U.S.C. Sec. 22, precludes the exertion of personal jurisdiction over them

by this Court. The affidavit of Gerard Mandelbaum, appended to the Swiss defendants' motion for dismissal, establishes that the Swiss defendants have no office or place of business in the United States. They neither own nor possess any real estate or personal property in the State of Michigan. They have no bank accounts, telephone listing, warehouse, stock of goods or agent in the State of Michigan. The Swiss defendants do not have any ownership interest in defendant Norman M. Morris Corporation, which is an independent legal entity. Norman M. Morris Corporation purchases watches from the Swiss defendants outright, and the watches are shipped f. o. b. Switzerland. Further, none of the activities alleged by the plaintiff rise to the level of transacting business in a "practical everyday business or commercial concept of doing or carrying on business of a substantial character." *O.S.C. Corporation v. Toshiba America, Inc.*, 491 F.2d 1064, 1066 (9th Cir. 1974). (Sale and delivery of alien parent corporations' products by its *wholly owned subsidiary* within the district held not sufficient to permit personal jurisdiction in an antitrust action against parent corporation).

Further, where the foreign corporation has no office within the district and has transacted no business within the state, even the facts that a wholly owned subsidiary did business within the state *and* had some common officers with the parent corporation has been held to be insufficient to subject the foreign parent corporation to venue in the district under 15 U.S.C. Sec. 22. *Hayashi v. Sunshine Garden Products, Inc.*, 285 F.Supp. 632 (W.D.Wash.1967), aff'd 396 F.2d 13 (9th Cir. 1968), cited in *O.S.C. Corporation v. Toshiba America, Inc.*, 491 F.2d at 1066; see *Hoffman Motors Corporation v. Alfa Romeo S.P.A.*, 244 F.Supp. 70 (D.C.N.Y.1965) explicating the nature and quality of a subsidiary's activities necessary to subject the alien parent corporation to personal jurisdiction.

The plaintiff does not cite any case in which an alien corporation was subjected to personal jurisdiction in the complete absence of contacts and transaction of business presented in this case. The cases relied upon by the plaintiff turned on the validity of service to effect personal jurisdiction pursuant to jurisdictional long-arm statutes, and not solely on the service portion of 15 U.S.C. Sec. 22; they also involved "minimum contacts" which met due process principles. See *Hoffman Motors Corporation v. Alfa Romeo S.P.A.*, 244 F.Supp. 70, 78 (S.D.N.Y.1965) (alien corporation which had negotiated and executed a franchise agreement in New York City found to have "transacted business" in New York; service of process valid under the New York state long-arm statute); *Mandelkorn v. Patrick*, 359 F.Supp. 692, 694 (D.C.D.C.1973) (uncontroverted overt acts in furtherance of a conspiracy committed by *employed* agent within the district sufficient contact to enable valid service of process under the District of Columbia's long-arm statute).

Further, although the plaintiff alleges that the Swiss defendants exercise substantial control over the Norman M. Morris Corporation, the affidavit and particularly the facts set forth therein suggest otherwise. Norman M. Morris Corporation is an independent legal entity from the Swiss defendants. The Swiss defendants do not own any stock in Morris, nor do they have corporate affiliation with Morris. (See affidavit of Gerard Mandelbaum, appended to defendants' motion). Looking to the totality of the relationship of the Swiss defendants with Norman M. Morris Corporation, it cannot be inferred that the Swiss defendants have the ability to influence major decisions of Morris which could or do lead to violations of the antitrust laws. See *Call Carl, Inc. v. B. P. Oil Corp.*, 391 F.Supp. 367, 371–371 (D.C.Md.1975).

■ Finally, the allegation that the Swiss defendants have conspired with Morris in certain antitrust violations does not, in the absence of any "minimum contacts" with this district, provide a sufficient basis for valid service of process under 15 U.S.C. Sec. 22. The plaintiff's reliance on *Giusti v. Pyrotechnic Industries, Inc.*, 156 F.2d 351 (9th Cir. 1946) is not well founded, as recent

decisions within the 9th Circuit have given *Giusti* a critical reading. See *Occidental Petroleum Corporation v. Buttes Gas & Oil Company,* 331 F.Supp. 92, 96–97 (C.D.Cal. 1971), *aff'd* 461 F.2d 1261 (9th Cir. 1972), *cert. denied* 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221:

> The co-conspirator theory of "transacting business" within the meaning of Section 12 of the Clayton Act—to which *Giusti* has been said to have given "illegitimate birth"—has been rejected by the only court of appeals squarely confronted with it [citing *Bertha Building Corp. v. National Theaters Corp.,* 248 F.2d 833, 836 (2d Cir. 1957), *cert. denied* 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958); see *H.L. Moore Drug Exchange, Inc. v. Smith, Kline and French Laboratories,* 384 F.2d 97, 98 (2d Cir. 1967)], and has (in dictum) been termed "frivolous" by the Supreme Court [citing *Bankers Life and Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953)]. While it has been observed, as plaintiffs herein stress, that the venue provisions for private antitrust actions are intended to give injured plaintiffs a broad choice of forum, the co-conspirator approach, allowing venue as to defendants with no direct contacts with the forum district, has frequently been rejected as an unwarranted extension, beyond the legislative purpose. *E. g., Bankers Life & Casualty Co. v. Holland, supra; Independent Productions Corp. v. Loew's, Inc.,* 148 F.Supp. 460, 463 (S.D.N.Y.1957); *West Virginia v. Morton International, Inc.,* 264 F.Supp. 689, 695 (D.C.Minn.1967); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 262 (E.D.Pa.1968); *Byrnes, supra,* 11 Antitrust Bull. at 895–896. One major vice of the theory, it has been noted, is that under it a defendant could establish the claim of improper venue only after submitting to a trial on the merits. See *West Virginia v. Morton International, supra,* 264 F.Supp. at 695; *Byrnes, supra,* 11 Antitrust Bull. at 896. 331 F.Supp. at 96–97.

Application of the *Occidental Petroleum* rationale to the instant case compels the conclusion that the allegation of conspiracy is not sufficient to permit service under 15 U.S.C. Sec. 22.

The allegation of conspiracy also does not operate to provide personal jurisdiction under 15 U.S.C. Sec. 15, which permits personal jurisdiction over a defendant who has an agent in the forum district. First, there is no basis in the pleadings for the conclusion that Morris is the Swiss defendants' agent. The plaintiff uses several inconsistent terms in describing the relationship between the Swiss defendants and Morris, referring to Morris as: "manufacturer's authorized distributor," (para. 5 of Complaint); "co-conspirator" (para. 7 of Complaint); "exclusive distributor" (para. 15 of Complaint). However, at no point in the pleadings nor by any affidavit does the plaintiff rebut the independence of Morris from the Swiss defendants, as set forth in Gerard Mandelbaum's affidavit, attached to the Swiss defendants' motion. A decision cited by the plaintiff, *Leasco Data Processing Equipment Corp. v. Maxwell,* 319 F.Supp. 1256 (S.D.N.Y.1970), dealt with a similar situation arising under the Securities Act of 1934 and relating to *in personam* jurisdiction:

> [M]ere allegations of conspiracy, and even the presence of one co-conspirator within the jurisdiction, do not give jurisdiction over all the alleged co-conspirators. . . . to meet due process requirements there must be a factual showing of a conspiracy and also of a connection between the acts of the conspirator who was present in the jurisdiction and the conspirator who was absent. . . . As an analogy, to establish an agency relationship under the New York long-arm statute . . . there must be specific facts that show that the principal had requested the agent to perform purposeful acts in New York for the principal's benefit. 319 F.Supp. at 1261–1262, cited in *Mandelkorn v. Patrick, supra,* 359 F.Supp. at 695–696. See also *Albert Levine Associates v. Bertoni & Cotti,* 309 F.Supp. 456, 458 (D.C.S.D.N.Y.1970).

The plaintiff has not alleged that the Swiss defendants have or have had an agent in this district or the State of Michigan for any purpose, conspiratorial or otherwise. There are allegations that Norman M. Morris Corporation has an agent in Michigan, but that relationship cannot, on the basis of the pleadings, be attributed to the Swiss defendants.

The appropriate co-conspirator test of the sufficiency of overt acts in furtherance of a conspiracy to provide personal jurisdiction over all the co-conspirators under 15 U.S.C. Sections 15, 22 is set forth in *State of West Virginia v. Morton International, Inc.,* 264 F.Supp. 689, 691–694 (D.Minn.1967). The absent co-conspirators' acts in furtherance of the conspiracy must be of such a quality as to meet the transacting business test of 15 U.S.C. Sec. 22. In the present case, the allegations of the plaintiff, including the offering of warranties, dissemination of promotional materials, and even the buying up of watches sold by the plaintiff to retailers, do not add up to a level of transacting business required by 15 U.S.C. Sec. 22.

In conclusion, the co-conspirator test, requiring that the overt acts in furtherance of the conspiracy rise to the level of the "transacting business" test of 15 U.S.C. Sec. 22, is not met in the present case, even accepting the plaintiffs' allegations of conspiratorial activity involving the absent Swiss co-defendants. Such activity is not sufficient to meet the "transacting business" test of the Clayton Act.

The third basis upon which plaintiff claims valid personal jurisdiction over the Swiss defendants is under the Michigan long-arm statute, M.C.L.A. Sec. 600.715(2) and Fed.Rules Civ.Proc. 4(e) and 4(i)(1)(D).

■ The plaintiff contends that valid personal service over the Swiss defendants can be had pursuant to the Michigan long-arm statute permitting limited jurisdiction over corporations who have a relationship with the state arising from:

The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

M.C.L.A. Sec. 600.715(2), M.S.A. Sec. 27A.715(2). The plaintiffs' antitrust and unfair competition claims constitute a form of tort action. *McCrory Corporation v. Cloth World, Inc.,* 378 F.Supp. 322, 324–325 (S.D.N.Y.1974); *Albert Levine Associates v. Bertoni and Cotti,* 314 F.Supp. 169 (D.C.N.Y.1970).

The Michigan long-arm statute is designed to permit the exertion of personal jurisdiction by the State's courts to the full extent allowed under the *International Shoe* line of authority. See *Woods v. Edgewater Amusement Park,* 381 Mich. 559, 564, 165 N.W.2d 12 (1969). The essence of *International Shoe,* however, is the requirement that the defendant have such minimum contacts with the plaintiff's state so that maintenance of the action would not offend "traditional notions of fair play and substantial justice." See *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), cited in *Woods v. Edgewater Amusement Park, supra,* 381 Mich. at 564–565, 165 N.W.2d 12. The "minimum contacts" test to be applied with respect to M.C.L.A. Sec. 600.715 is set forth in *Shepler v. Korkut,* 33 Mich.App. 411, 414–415, 190 N.W.2d 281 (1971):

Jurisdiction exists if defendants . . . had such "minimum contacts" with this state that maintenance of the action would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* (1946), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. It is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Hanson v. Denckla,* (1958) 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

It is sufficient for purposes of due process that the suit be based on a contract which had a substantial connection with the state of the forum. A single transaction may be sufficient to meet the "minimum contacts" test. The state of the forum may have a manifest interest in providing effective means of redress for its resi-

dents considering the particular circumstances of the case and that the crucial witnesses may be its residents. *McGee v. International Life Ins. Co.,* (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. The trend in defining due process is toward the court in which both parties can most conveniently settle their dispute. *Gray v. American Radiator and Standard Sanitary Corporation,* (1961) 22 Ill.2d 432 (176 N.E.2d 761).

Whether the required "minimum contacts" exist depends upon the particular circumstances of each case. *Woods v. Edgewater Amusement Park,* (1969) 381 Mich. 559, 569, 165 N.W.2d 12. *Shepler v. Korkut,* 33 Mich.App. at 414–415, 190 N.W.2d at 282–283.

The complaint does not allege that the Swiss defendants have "purposely availed" themselves of the privilege of conducting activities within the forum, thereby invoking the benefits and protection of its laws. They have not entered into any contract having a "substantial connection" to this forum. There is a complete absence of contacts upon which jurisdiction could be based.

Importantly, just as the Swiss defendants are not within the "transacting business" requirement of 15 U.S.C. Sec. 22, so, too, are they not within the "minimum contacts" standard of *International Shoe* due process requirements. The allegation of conspiratorial activities having tortious consequences in this district is not sufficient as a basis for jurisdiction in the absence of any other contacts. See *O.S.C. Corp. v. Toshiba America, Inc.,* 491 F.2d 1064 (9th Cir. 1974); *West Virginia v. Morton International, Inc.,* 264 F.Supp. 689 (D.Minn.1967); *I.S. Joseph Co., Inc. v. Mannesmann Pipe and Steel Corp.,* 408 F.Supp. 1023 (D.Minn.1976).

A recent Michigan Court of Appeals decision has recognized the limitation of due process on the "tortious consequences" language of M.C.L.A. Sec. 600.705(2). *Khalaf v. Bankers and Shippers Insurance,* 62 Mich. App. 678, 233 N.W.2d 696 (1975). [The language of Sec. 600.705(2) is equivalent, as to tortious consequences, to Sec. 600.715(2)].

In *Khalaf,* the plaintiff had won a judgment against an Illinois machine repair company doing business in Michigan. The repair company became insolvent and the judgment was uncollectible. The plaintiff then sued the machine repair company's insurer and its agent, alleging that they had been negligent in not providing the machine repair company with the type of insurance coverage that would have covered the negligence that caused the plaintiff's injuries. The plaintiff alleged that as a consequence of the insurer's and its agent's negligence, he had suffered damage in Michigan, thereby permitting personal jurisdiction under M.C.L.A. 600.705(2).

In rejecting this claim, the Michigan Court of Appeals held:

Whether or not the plaintiff states an action in tort, the contacts for purposes of jurisdiction must still be weighed by the principles of due process. The mere showing of a consequence, no matter how remote from the defendant's action, is not a talisman to be used to sweep aside the principles of due process. National Machine, not defendant Dullard, entered Michigan, negligently repaired a machine which resulted in physical injury to the plaintiff, and failed to defend the lawsuit or pay the judgment. Defendant Dullard did not start this chain of events nor could he control them. The defendant agent is not linked to National Machine like a manufacturer may be linked to a product for purposes of finding a connection with the state sufficient to satisfy due process. Defendant Dullard's part in causing the consequence that National Machine is uncollectible in Michigan is not a sufficient contact under the aforementioned principles of due process to invoke limited personal jurisdiction over him under M.C.L.A. 600.705(2); M.S.A. 27.705(2). 62 Mich.App. at 681–682, 233 N.W.2d at 698.

The *Khalaf* case establishes an interpretation of the Michigan long-arm statute which excludes the plaintiff's interpretation of the long-arm statute. The existence of a remote consequence, as alleged by the

plaintiff in this case, is not sufficient in the absence of any other contact with this forum, to permit exertion of jurisdiction over the Swiss defendants pursuant to M.C.L.A. Sec. 600.715(2).

The plaintiff's own analogy to the New York long-arm statute supports the rejection of the long-arm basis for jurisdiction. (See Plaintiff's motion p. 15). In a recent case brought in New York involving the same defendants, the Second Circuit held that the Swiss defendants' contacts with the New York forum were insufficient to permit exertion of personal jurisdiction pursuant to the New York long-arm statute. *McShan v. Omega Louis Brandt et Frere*, 536 F.2d 516 (2nd Cir. 1976).

The *McShan* case involved an action brought by a New York patent holder against these Swiss defendants for breach of a patent sublicensing agreement. Personal jurisdiction was sought under the "transacts any business within the state" language of the New York long-arm statute, N.Y.C.L.P.R. Sec. 302. 536 F.2d at 518. Although the plaintiff had signed the sublicensing agreement in New York, and forwarded it to Switzerland for execution by Omega, and although the agreement contained a clause providing for New York law to govern disputes over the agreement, the Second Circuit rejected the validity of an application of the long-arm statute.

The Second Circuit was presented with essentially the same activities of these same Swiss defendants, and found those activities to be insufficient for long-arm statute "minimum contacts" purposes.

In summary, the type of activities and allegations involved in the present case have been held to be insufficient to permit exertion of personal jurisdiction under the Clayton Act, 15 U.S.C. Sec. 22, in accordance with the due process principles of *International Shoe, supra*. See also: *Phillip Gall & Son v. Garcia Corp.*, 340 F.Supp. 1255 (D.C.Ky.1972); *Occidental Petroleum Corporation v. Buttes Gas & Oil Co.*, 331 F.Supp. 92, 98 (C.D.Cal.1971), *aff'd* 461 F.2d 1261 (9th Cir. 1972), *cert. denied* 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221; *O.S.C.*

*Corp. v. Toshiba America Inc.*, 491 F.2d 1064 (9th Cir. 1974).

Similarly, these same defendants' analogous absence of contacts with another forum has been held to prevent exertion of personal jurisdiction through a broad state long-arm statute. *McShan v. Omega Louis Brandt et Frere, S.A.*, 536 F.2d 516 (2nd Cir. 1976).

Additionally, the Michigan long-arm statute, relevant here, has been expressly construed as requiring a consequence of a nature sufficient to satisfy due process. *Khalaf v. Bankers & Shippers Insurance Co.*, 62 Mich.App. 678, 682, 233 N.W.2d 696 (1975).

Under either approach, the Clayton Act or the Michigan long-arm statute, it is clear that the complete absence of contacts with this forum by the Swiss defendants precludes this Court's exertion of personal jurisdiction over them.

For the foregoing reasons defendants Omega Louis Brandt Et Frere S.A. and Societe Suisse Pour L'Industrie Horlogere Management Services S.A. motion to dismiss is GRANTED.