## AMERICAN STEEL, INCORPORATED

### v.

### CASCADE STEEL ROLLING MILLS, INC.

#### Civ. A. No. 74–C–67.

United States District Court,
S. D. Texas,
Corpus Christi Division.

April 3, 1975.

Gary Norton, Branscomb, Gary, Thomasson & Hall, Corpus Christi, Tex., for American Steel, Inc.

Leslie S. Lockett (now deceased), Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for Cascade Steel Rolling Mills, Inc.

### ORDER

OWEN D. COX, District Judge.

In this breach of contract action brought by American Steel, Inc., a Texas corporation, against Cascade Steel Rolling Mills, Inc., an Oregon corporation, the Defendant has raised by its motion the defense, under Rule 12(b)(2), of lack of per-

sonal jurisdiction. Certain facts basic to this jurisdictional question are in dispute. In answering such question, it is proper for this Court to resolve such disputes in the Plaintiff's favor, and it will do so. Accordingly, the Court perceives, for the purpose of the Defendant's motion, the facts to be as follows:

In March, 1973, the Defendant (Oregon corporation) approached the Plaintiff (Texas corporation) with an offer to sell it steel products. After extended negotiations via telecommunications (which infers that during negotiations no representative of the Texas corporation went to Oregon), the agreement became binding with Plaintiff's acceptance by telephone and by telegram from its Texas offices, and by forwarding its purchase order. The Court concludes, for the purpose of this issue, that the contract was consummated in Texas. This contract had two provisions pertinent to this motion. First, delivery of the steel was to be made F.O.B. Oregon, and the ultimate destination of the steel was apparently Singapore, certainly not Texas. Secondly, the Plaintiff was required by the contract to obtain an irrevocable letter of credit from the Corpus Christi State National Bank in Corpus Christi, Texas, payable at the U. S. National Bank in McMinnville, Oregon. Subsequently, officials of the Plaintiff company did visit the Defendant's office and steel-making facilities in Oregon. The Defendant sent no representatives or agents into this state in connection with this transaction, and it has no representative or agent for service in this state. Other than this particular transaction, the Defendant has never solicited any business in this state and has never delivered any materials into this state.

When the Defendant allegedly failed to adequately perform under the contract, the Plaintiff filed its action in this United States District Court. The Plaintiff obtained service of process through the Texas Secretary of State, pursuant to Tex.Rev. Civ.Stat.Ann., Art. 2031b. The complaint asserts that service under this statute was proper because the Defendant was "doing business" within this state. The Plaintiff, who has the laboring oar, apparently bases this allegation on the fact that the Defendant entered into a contract which was consummated in Texas and which was partially performable in Texas due to the requirement that the Plaintiff procure an irrevocable letter of credit here. See Tex.Rev.Civ. Stat.Ann., Art. 2031b(4).

The first step in this inquiry is to determine whether the nonresident Defendant can be held within a reading of the Texas "long arm" statute.

 If we take the Plaintiff's allegations to be true, the Court finds the Defendant to be within the statutory ambit of Art. 2031b. It was "doing business" within the meaning of 2031b because, as defined by the statute, there was a "contract . . . to be performed in whole or in part by *either* party in this State." Tex.Rev.Civ.Stat.Ann., § 2031b(4). See *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492, n. 11 (5th Cir. 1974). A contractual obligation on the part of the Plaintiff to secure a letter of credit at the Corpus Christi State National Bank in Corpus Christi, Texas, would seem to satisfy a literal reading of the statutory performance requirement. The statutory requirements of said Art. 2031b have been met for our purposes here.

Again taking the alleged facts relied on by Plaintiff as being true, the Court must now decide whether assertion of jurisdiction in this case exceeds constitutional limits. The principles, while general, are clear. Article 2031b represents an effort by the state legislature to exploit to the fullest the expanding limits of *in personam* jurisdiction. *Atwood Hatcheries v. Heisdorf & Nelson Farms,* 357 F.2d 847 (5th Cir. 1966). However, due process does still impose *some* restraints on this expanding assertion of jurisdiction over nonresident defendants. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir. 1973). The Fifth Circuit has recently distilled from the numerous decisions on the permissible grasp of "long arm" statutes a dual test for determining

whether a court may take jurisdiction without depriving the defendant of due process. *Product Promotions, Inc. v. Cousteau, supra*, at 494. The quality of the Defendant's contacts with the forum state must be of such a purposeful nature that the Court can determine that such contacts were "deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." *Id.*, at 496. Secondly, "it must be fair and reasonable to require the defendant to come into the state and defend the action." *Id.*, at 494.

■ In applying the first of these tests, it becomes apparent that the Defendant's contacts with the forum state is limited to the alleged consummation of the contract in this forum. All elements of the Defendant's performance under the contract were to take place outside this forum. The mere consummation of a contract by telephone, telecommunications or mail with a Texas resident as principal *without more* does not indicate to this Court adequate minimum contact with this state so as to maintain jurisdiction here. *Arthur, Ross & Peters v. Housing, Inc.*, 508 F.2d 562 (5th Cir. 1975); *Sun–X International Co. v. Witt*, 413 S.W.2d 761, 766–67 (Tex.Civ.App.—Texarkana, 1967, writ ref'd., n. r. e.). Where some contractual performance on the part of the Defendant is indicated in the contract, there is a much stronger case for arguing that the Defendant has undertaken some purposeful activity in the state and has therefore brought himself within the jurisdiction of the Court. See *Clark Advertising Agency, Inc. v. Tice*, 331 F.Supp. 1058 (N.D.Tex.1971); *Geodynamics Oil & Gas Corp. v. U. S. Silver & Mining Corp.*, 358 F.Supp. 1345 (S.D.Tex.1973). This Defendant had no duty of performance in Texas under this contract.

The Plaintiff suggests that because the contract required it to obtain an irrevocable letter of credit at a specified bank in the forum state, there was partial performance in the forum and this is supportive of jurisdiction. This duty of the Plaintiff adds nothing to the quality of the Defendant's contacts with the forum. The letter of credit did no more than create a mechanism to assure the Defendant of payment. *Amco Transworld, Inc. v. M/V Bambi*, 257 F.Supp. 215, 218 (S.D.Tex.1966).

In applying the second test outlined in *Product Promotions, Inc. v. Cousteau, supra*, that the Court's exercise of jurisdiction over the nonresident defendant not be unfair or unreasonable, the Court finds at this point the scale appears to be fairly well balanced. The Plaintiff is a Texas corporation and therefore this state has at least some interest in the dispute. While either party would suffer some inconvenience if required to litigate in the home forum of the other, there has been no suggestion that if Cascade Steel were required to come to Texas to defend this suit it would be unable to do so. Even though it undoubtedly would be relatively more expensive for the Defendant to defend its suit here, it has not been asserted that the cost would be so great or so disproportionate as to threaten the Defendant corporation's due process rights.

At this point, the Court wishes to point out that, by its order dated November 25, 1974, the Plaintiff was granted until December 20, 1974, for additional discovery on this jurisdictional issue only; and, subsequently, the deposition of Roy Inoue was taken and later filed on January 16, 1975. No other effort was made, so far as the record reflects, to obtain additional information which might shed light on our problem. Since this Court has looked at the facts available by affidavits and the deposition above referred to, and has determined there are no allegations of fact in any pleadings which are not covered by said affidavits and deposition, it concludes that no evidentiary hearing on this jurisdictional issue is necessary.

So, this Court has denied the Plaintiff's motion for an evidentiary hearing on this issue. It is ORDERED that no hearing be held. And, the Court now is of the opinion that the Plaintiff has failed to show, by allegations in its pleadings, by memoranda

and affidavits and the Inoue deposition, contacts of sufficient quality and extent between this Defendant and the forum to satisfy the requirement that the Defendant has purposely invoked the benefits or protections of the law of this state. The Court can extend its reach no further than the Constitution permits. This Plaintiff asks it to reach too far.

The Defendant's motion to dismiss is granted.