Charles R. PETERSON, Plaintiff,

v.

CROWN FINANCIAL CORPORATION, Defendant.

Civ. No. 76–0–334.

United States District Court,
D. Nebraska.

Aug. 19, 1977.

Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, Omaha, Neb., for plaintiff.

Baird, Holm, McEachen, Pedersen, Hamann & Haggart, Omaha, Neb., for defendant.

SCHATZ, District Judge.

This matter is currently before the Court on defendant's motion to dismiss for lack of personal jurisdiction (Filing No. 9). The

question presented is whether long-arm jurisdiction may be asserted over a non-resident corporation which loaned money to a Nebraska resident when the lending corporation is not otherwise transacting business within the state.

## FACTUAL BACKGROUND

Plaintiff owned approximately eleven thousand acres of land in Nebraska as well as all the outstanding stock of a domestic corporation. In 1969, he decided to merge these holdings with the National Alfalfa Dehydrating and Milling Company (not a defendant). To facilitate this merger, plaintiff borrowed $1,450,000 from defendant to pay off debts secured by mortgages and liens on his property. (Notes dated December 12, 1969, and December 29, 1969.) These loans from defendant were secured by liens on plaintiff's personal property and growing crops.

Plaintiff subsequently borrowed an additional $3,000,000 from defendant and executed a note for $4,500,000 consolidating all loans. (Note of July 6, 1970, superseded by note of December 29, 1970.) The borrowed money and plaintiff's property and corporation were then exchanged for controlling interest in National Alfalfa pursuant to a plan of merger. Plaintiff's shares of National Alfalfa stock were pledged as security for the last two mentioned notes executed in defendant's favor.

In December, 1972, plaintiff was unable to make payment on the note of December 29, 1970, whereupon the parties renegotiated the note. Plaintiff borrowed additional money from a third party to pay the interest on the December 29, 1970, note. In December, 1974, plaintiff also assigned voting rights in the National Alfalfa stock to the defendant. In December, 1975, defendant requested payment of additional interest for the period ending December, 1972. Plaintiff paid the interest demanded to obtain the return of the shares of stock which he subsequently sold using the purchase price to discharge the notes to defendant.

Plaintiff is now suing to recover the second payment of interest for the period up to December, 1972, claiming that the amount was fraudulently extorted by defendant. Defendant has moved to dismiss on the grounds that this Court lacks jurisdiction over the person of defendant, a nonresident corporation.

## DISCUSSION

The Court of Appeals for the Eighth Circuit in *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Company*, 558 F.2d 450 (8th Cir. 1977), has summarized the applicable law as follows:

The United States District Court for the District of Nebraska has concluded that the reach of the Nebraska long-arm statute is limited only by the constitutional constraints imposed by the minimum contacts rule. In determining whether application of Nebraska's long-arm statute to the facts of the cases before us offends due process, it is necessary to ask whether the nonresident defendants have sufficient minimum contacts with the forum state so as to comply with traditional notions of fair play and substantial justice, whether appellees have invoked the benefits and protections of Nebraska law by their activities there, and, because these cases involve contract disputes, whether the contracts have a substantial connection with the forum state. This Court has enunciated certain general factors to be considered in determining whether personal jurisdiction under a long-arm statute meets due process requirements: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. These factors provide a general guide for applying the abstract concept of "fair play and substantial justice," rather than establishing a mathematical formula. . . . While presence by the defendant in the forum state is not a jurisdictional prerequisite; it is necessary that the defendant have suffi-

cient minimum contacts with the forum state so that requiring it to defend itself there will not offend traditional notions of fair play and substantial justice. Appellees have no such contacts. The contracts at issue here were not to be performed in any part in Nebraska, the goods involved in the contracts did not originate in nor were they destined for Nebraska, the contracts were not negotiated in Nebraska, they were not executed there, and appellees employed no salesmen or agents in Nebraska. While no one of these factors is alone determinative, there is lacking in these cases any contact between an appellee corporation and the State of Nebraska sufficient to satisfy due process. The letters and telephone calls in this purely commercial setting do not supply the necessary minimal contacts.

At p. 453–454, 454–455. (Citations omitted.)

Plaintiff does not allege that defendant engaged in any business in Nebraska other than the loan transaction at issue. Defendant is not a resident of Nebraska and has no office, agent or employee in the state. The fact that defendant was involved in a business transaction with a Nebraska resident is in itself insufficient to justify the assertion of jurisdiction over the defendant. *See Aaron Ferer, supra.* Nor does the loan of money to plaintiff to enable him to obtain control of a Missouri based corporation constitute the transaction of business in Nebraska. *Riley v. Communications Consultants, Inc.,* 385 F.Supp. 296 (N.D.Miss.1974).

Only two contacts by defendant with the state of Nebraska bear any relationship to the instant cause of action:

1) The first two loans ($1,450,000) which were used by plaintiff to clear title to his assets in anticipation of the proposed merger, were secured by a lien on plaintiff's personal property filed in Holt County, Nebraska.

2) Two officers of the defendant traveled to Nebraska to negotiate the stock proxy which permitted defendant to exercise effective control over National Alfalfa, and which, plaintiff alleges, permitted defendant to coerce the payment of additional interest on the notes held by defendant.

The defendant's original loan to plaintiff put plaintiff in a position to effect the proposed merger. The December 12, 1969, agreement provided that it was to be interpreted in accordance with Nebraska law. The defendant filed liens in Holt County, Nebraska, covering plaintiff's personal property. In sum, the defendant arguably invoked the protection of Nebraska law as contemplated by *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ However, the parties understood and intended this first set of loans as merely the preliminary step toward plaintiff's merger with National Alfalfa. On July 6, 1970, the parties entered into a new agreement whereby plaintiff borrowed an additional $3,000,000 and pledged as security the stock of National Alfalfa acquired by him. This agreement provided that it was to be interpreted in accordance with the laws of Pennsylvania. The earlier agreement was terminated and the liens on plaintiff's personal property released. Defendant's reliance on Nebraska law was ended. Plaintiff's cause of action arises out of the dispute as to the payment of interest on this last agreement and its subsequent extensions. The protections afforded by Nebraska law which were invoked in preliminary stages of the financing plan standing alone are not sufficient to subject the non-resident defendant to jurisdiction on a cause of action arising from subsequent dealings between the parties where these dealings have no connection with this forum other than the fact that plaintiff is a resident. *See Aaron Ferer, supra; Conner v. Southern,* 186 Neb. 164, 181 N.W.2d 446 (1970).

The second contact with Nebraska is one which is traditionally associated with assertion of jurisdiction over a non-resident, *i.e.,* presence within the forum state. On February 5, 1974, the president and the secretary of defendant came to Omaha, Nebraska, to negotiate the assignment to defend-

**904**

ant of an irrevocable voting proxy in plaintiff's stock which had been pledged as security for defendant's loans to the plaintiff. This visit to Nebraska was made after the agreement and loans had been in existence for nearly four years. Its purpose was the enforcement of that agreement by strengthening defendant's control over the collateral.

Plaintiff argues that this last contact in which defendant sent its two principal officers into the state is crucial to the instant litigation since the proxy gave defendant sufficient control over plaintiff's stock to enable defendant to allegedly extort additional interest payments from plaintiff before relinquishing the shares to him for sale to a third party. While defendant may in fact have gained additional control over the collateral, the proxy itself does not alter the obligations of the respective parties under the agreement of 1970. In fact, defendant's request for the proxy was consistent with the terms of the agreement which provided in part:

> Upon default under its note, debtor grants to Crown [the right] to substitute or exchange said collateral and to demand additional collateral whenever Crown deems the existing collateral to be insufficient.

The negotiations which resulted in payment of interest at issue here occurred in Pennsylvania in December, 1972. The crucial issue in plaintiff's suit involves the terms and effect of these negotiations of 1972, not the solicitation of the proxy in 1974.

■ The activities of defendant's parent corporation, Crown Cork and Seal, were discussed at length during the hearing on this motion. Although defendant is a wholly owned subsidiary and does share some officers with the parent corporation, plaintiff has failed to show that defendant is treated as anything other than a separate entity by its parent corporation. In addition, plaintiff has not shown any relationship between the business of Crown Cork and Seal and the defendant's loan to plaintiff. Thus, the parent's activities do not justify asserting jurisdiction over the de-

fendant's subsidiary. *Aanstad v. Beech Aircraft Corp.*, 521 F.2d 1298 (9th Cir. 1974).

■ The filing of liens in Holt County, Nebraska, and the negotiation of the stock proxy are part of the dealings between plaintiff and defendant giving rise to the instant litigation. The balance of the negotiations, the purpose of the dealings between the parties and the principal effect (control of National Alfalfa) have no relationship to this state. In the commercial setting in which this litigation arose, the Court finds that the two contacts with the state of Nebraska are insufficient to comport with the requirements of due process.

Accordingly, a separate order will be entered this day dismissing plaintiff's complaint for lack of jurisdiction over the defendant.