PARISH v MERTES

Docket No. 77-1588. Submitted February 9, 1978, at Detroit.—Decided June 20, 1978.

Multiple long-distance telephone calls between the office of Arthur Mertes in Illinois and the home of Mary J. Parish in Michigan resulted in a loan agreement, dictated in Michigan, typed in Illinois and signed by Arthur and Kathleen Mertes in Illinois. The note was made payable in Detroit. Mrs. Parish sued Arthur and Kathleen Mertes and the Wayne Circuit Court, Thomas Roumell, J., granted a summary judgment to plaintiff. Defendants appeal raising several issues. *Held:*

1. Michigan courts, under the long-arm statute, may obtain limited personal jurisdiction over nonresident defendants who undertake actions over which they can expect the Michigan courts to assert jurisdiction; use of the telephone to negotiate a loan with Michigan residents, which loan is payable in Michigan, constitutes such actions.

2. A loan agreement is not invalid for lack of consideration, as being a sham transaction or for false representations where it was made to allow the maker's employer to stay in business, it was to be repaid from one of the employer's accounts receivable, it was agreed that the maker would not be liable on the note but would turn over the proceeds from the account receivable when it was received, and payment of the account was received by the employer and was given to the maker, who retained possession of it.

Affirmed.

M. J. Kelly, P. J., concurred in the result reached by the majority for the reason that the note was payable in Michigan, but would hold that the negotiation of the loan agreement by long-distance phone calls with a Michigan resident, by itself, is insufficient to grant Michigan courts jurisdiction of nonresidents under the long-arm statute.

References for Points in Headnotes
[1, 2, 4] 20 Am Jur 2d, Courts, §§ 123, 172 *et seq.*
[3] 17 Am Jur 2d, Contracts, §§ 4, 104, 105, 397.

OPINION OF THE COURT

1. COURTS—CONSTITUTIONAL LAW—STATUTES—JURISDICTION OVER
   NONRESIDENTS.

   State court jurisdiction can be constitutionally asserted over a
   nonresident defendant under a long-arm statute in situations
   where the defendant undertook an action such that he can
   expect the courts of another state to assert jurisdiction (US
   Const, Am XIV, MCL 600.705[1]; MSA 27A.705[1]).

2. COURTS—JURISDICTION OVER NONRESIDENTS—PROMISSORY NOTES.

   Michigan courts may properly assert jurisdiction over a nonresi-
   dent maker of a loan agreement and promissory note where the
   note is payable in Michigan and several long-distance telephone
   calls between the Michigan payee and the nonresident debtor
   or his agent were made to negotiate the loan agreement.

3. CONTRACTS—LOAN AGREEMENTS—PROMISSORY NOTES—DEFENSES—
   LACK OF CONSIDERATION—SHAM TRANSACTION—FALSE REPRE-
   SENTATION.

   A loan agreement is not invalid for lack of consideration, as a
   sham transaction or for false representations where it was
   made to allow the maker's employer to stay in business, it was
   to be repaid from one of the employer's accounts receivable, it
   was agreed that the maker would not be liable on the note but
   would turn over the proceeds from the account receivable when
   it was paid, and payment of the account was received by the
   employer and was given to the maker, who retained possession
   of it.

   CONCURRENCE IN PART, DISSENT IN PART BY M. J. KELLY, P. J.

4. COURTS—JURISDICTION—JURISDICTION OVER NONRESIDENTS.

   *To gain personal jurisdiction over a nonresident party, the party
   must be involved in some purposeful activity within the state,
   and mere use of the telephone from outside the state for
   consummating a contract cannot be considered as purposefully
   availing one's self of the privilege of conducting activities
   within the forum state.*

*Ronald F. Parish,* for plaintiff.

*Gottlieb & Goren, P. C.,* for defendants.

Before: M. J. KELLY, P. J., and T. M. BURNS and
R. M. MAHER, JJ.

Per Curiam. Plaintiff sued upon a 30-day promissory note dated December 19, 1974, in the face amount of $5,924.44 at 8% interest. Defendants filed a special appearance and made a motion for accelerated judgment claiming lack of jurisdiction. Defendants were Illinois residents and were served in that state. After reviewing affidavits provided by the parties, the trial judge, on June 26, 1975, denied the motion for accelerated judgment and, on April 15, 1977, granted plaintiff's motion for summary judgment.

The loan in question was for an Illinois corporation, Controelectric, Inc. Defendants, in their original affidavit, stated that the note was negotiated, drafted, executed and witnessed in Illinois; that the money was delivered in Illinois; and that defendants never came to Michigan in connection with the transaction. Defendants also averred that it was understood by the parties that the transaction was intended to be a capital contribution, that the defendants agreed to be "straw parties" in order to conceal it and that all agreed defendants were not personally liable.

Plaintiff responded in her affidavit that multiple long-distance calls were made between defendant Arthur Mertes' office and plaintiff's home during which an oral contract was reached between the parties; that the agreement was dictated by plaintiff in Michigan to her husband, which he typed in Illinois; that the loan agreement and note were signed in Michigan by the plaintiff and in Illinois by the defendants; that the check was drawn on a Michigan bank, payment was due at plaintiff's home in Detroit and plaintiff had the option of demanding collateral held in Illinois.

Defendants answered with a final affidavit claiming: defendants are residents of Illinois and were

served there; the check referred to in plaintiff's affidavit was made out to plaintiff's husband and was cashed by him; from the proceeds, plaintiff's husband obtained four cashier's checks which were made out to creditors of Controelectric; the defendants received no monies from the check sent by plaintiff; plaintiff's husband typed the papers in Illinois and defendants had no knowledge that plaintiff signed the loan agreement; and, finally, defendants had no direct telephone conversations with plaintiff involving this alleged transaction.

Plaintiff claims jurisdiction over defendants on the basis of MCL 600.705(1); MSA 27A.705(1).

"Sec. 705. The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of the act which creates any of the following relationships:

"(1) The transaction of any business within the state."

The statute has been construed as extending the state's jurisdiction to the farthest limits permitted by due process. *Sifers v Horen,* 385 Mich 195; 188 NW2d 623 (1971). Due process requires that a defendant have certain minimal contacts with the state so that the suit does not offend the traditional notions of fair play. *International Shoe Co v Washington,* 326 US 310; 66 S Ct 154; 90 L Ed 95 (1945), *Keefer v May,* 46 Mich App 566; 208 NW2d 539 (1973).

A single transaction may be sufficient to meet the "minimum contacts" test of *International Shoe. Shepler v Korkut,* 33 Mich App 411; 190

NW2d 281 (1971). The word "any" in MCL 600.705(1) means, according to the Supreme Court in *Sifers v Horen, supra,* just what it says. It includes each and every. It comprehends the slightest. 385 Mich at 199, n 2.

In *McGee v International Life Ins Co,* 355 US 220; 78 S Ct 199; 2 L Ed 2d 223 (1957), the Supreme Court approved the previous *International Shoe* jurisdictional test and explained the expansion of the permissible scope of state jurisdiction by calling attention to the fundamental transformation of our national economy over the years and the expansion of modern transportation and communication, thus making it much less burdensome for the nonresident defendant to resist a plaintiff's claim. See also *Woods v Edgewater Amusement Park,* 381 Mich 559; 165 NW2d 12 (1969).

Further elucidation of the minimum contacts— fair play standard of *International Shoe* is found in *Gray v American Radiator & Standard Sanitary Corp,* 22 Ill 2d 432, 440–441; 176 NE2d 761 (1961).

"[T]he trend in defining due process of law is away from the emphasis on territorial limitations and toward emphasis on providing adequate notice and opportunity to be heard".

*Gray,* then, amplifies the fair play standard of the *International Shoe* test. The standard in *Gray* is essentially based upon the expectations of the parties. When a defendant undertakes an action such that she or he can expect the courts of another state to assert jurisdiction, that jurisdiction can be constitutionally asserted. See, Commentary: *Long-Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness,* 69 Mich L Rev 300, 313 (1970). The standards of *Interna-*

*tional Shoe, McGee* and *Gray* must be viewed each with reference to the other. The expectation standard of *Gray* evolves naturally from the minimum contacts standard of *International Shoe.*

We do not merely count contacts. Contacts are not to be measured quantitatively; they must be measured qualitatively. *Hadad v Lewis,* 382 F Supp 1365 (ED Mich, 1974). In so examining the nonresident defendants' contacts with the state of Michigan, we find a sufficient basis on which jurisdiction can be asserted over the defendants, mindful that there need be but a single act to find sufficient minimal contacts. *Crane v Rothring,* 27 Mich App 189; 183 NW2d 434 (1970), *Kiefer v May, supra.*

Plaintiff's affidavit cites several phone calls between her home in Michigan and defendants' office in Illinois. Plaintiff claims she spoke to Arthur Mertes, but he denies it. Nevertheless it is clear that the phone calls were made and dealt with the loan agreement and promissory note and that plaintiff's husband, in Illinois with the defendants, was acting as an intermediary between plaintiff and defendants. The telephone was the means of communication between the parties. That defendant Arthur Mertes denies he was a party to such conversations is secondary to the fact that they were made, that they were relayed through an intermediary from the Michigan plaintiff to Illinois defendants and that they concerned the loan transaction. Defendants' attempt to escape jurisdiction by denying they put telephone to ear, given the facts and circumstances of·this case, is simplistic. It is an affront to the Supreme Court's language in *McGee v International Life Ins Co, supra,* regarding the expansion of modern means of communication.

Furthermore, the loan agreement and the promissory note state that the place of payment was at plaintiff's home in Detroit, Michigan. Together with the telephone calls, this contact, looked at qualitatively if not quantitatively, is sufficient to confer jurisdiction over defendants on Michigan courts. Defendants signed the agreement and the promissory note knowing the place of payment was Michigan. They should reasonably have expected that they would be subject to jurisdiction in Michigan as long as adequate notice and the opportunity to be heard were provided. See *Gray v American Radiator & Standard Sanitary Corp, supra.* Defendants should not have been startled that a Michigan court saw fit to assert jurisdiction over them. Fair play permits this state's courts to assert such jurisdiction.

We find defendants' two remaining claims of error to be without merit. Contrary to defendants' contention, the trial court did not grant summary judgment based solely on defendants' depositions. The court explicitly stated it reviewed the files and the records, including the pleadings and the evidence, in addition to defendants' depositions. This is what is mandated by GCR 1963, 117.3. The mandate was fulfilled.

Nor did the trial court err in finding there were no errors of material fact. Defendants raised several defenses in their answer and affirmative defenses, including lack of consideration, sham transaction, and false representations.

Defendants claim that the transaction was really a capital contribution by plaintiff's husband, a shareholder of Controelectric, that was disguised to appear to be a loan by the use of the defendants as straw parties. The loan amount was that needed to allow Controelectric to stay in business.

The loan was to be repaid from an account receivable from Anheuser-Busch. Anheuser-Busch did send a check to Controelectric which was turned over to defendant Arthur Mertes. That check was still in his possession. At the time of the transaction, it was understood that the defendants would not be liable on the note, but that they would turn over the check from Anheuser-Busch when it came in.

Defendants cannot claim that there was no consideration. As an employee of Controelectric, the corporation for which the loan was intended, Arthur Mertes benefited by continuing to draw his salary. Mertes was also interested in investing in the corporation once the books showed a favorable outlook.

Nor was there a fraud or sham transaction. Neither defendant was being defrauded. They read, understood, and agreed to a loan agreement and a promissory note. They knew what the transaction entailed.

Finally, defendants cannot complain about false representations. While it is true they were told they would not be held liable on the note if they turned over the check from Anheuser-Busch, the account receivable was never turned over to plaintiff. Defendants did not fulfill their part of the bargain and their failure prohibits them from complaining now.

Affirmed.


M. J. KELLY, P. J. *(concurring in part, dissenting in part).* I write only to further examine the telephone transaction aspect addressed by the majority. It is my belief that if all defendants had done was to communicate by means of the telephone, either by receipt of interstate calls or by

initiating such calls in negotiating this loan, they would not ipso facto have become subject to in personam jurisdiction in this state.

The telephone conversations aspect of expanding jurisdiction in *McGee v International Life Ins Co,* 355 US 220; 78 S Ct 199; 2 L Ed 2d 223 (1957), was examined by the Second Circuit Court of Appeals in *Agrashell, Inc v Bernard Sirotta Co,* 344 F2d 583 (CA 2, 1965), which distinguished *McGee* when confronted with an issue similar to the issue at bar.

In *Agrashell,* defendants, residents of New York, bought walnut shells from the third-party defendant, Hammons Products Company, a Missouri corporation. When defendants resold the goods, plaintiff, a Delaware corporation, brought suit alleging that defendant had infringed plaintiff's patent rights. Defendants impleaded Hammons Company as a third-party defendant, alleging that it had warranted the fitness of the goods for resale and had agreed to indemnify defendants against a patent infringement suit. Hammons Company was served in Missouri. Hammons Company moved to dismiss the third-party complaint on the ground that it was not personally subject to the jurisdiction of the court. The *Agrashell* court stated:

"We fail to see in what material respect Hammons invoked the benefits and protections of New York law merely by negotiating and concluding goods contracts through the mails and by telephone with persons residing in New York. Other courts, construing similar state laws in like cases, have also found that these contacts are insufficient to give personal jurisdiction over the foreign corporation. *Growbark v Addo Mach Co.,* 16 Ill2d 426, 158 N.E.2d 73 (1959); *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.,* 239 F.2d 502 (4 Cir. 1956)." (Emphasis supplied.) 344 F2d at 587.

The court went on to distinguish *McGee v International Life Insurance Co, supra,* stating:

"[Defendant] relies heavily on *McGee v International Life Ins Co., supra.* There are certain resemblances between that case and ours. In *McGee,* California was allowed to exercise personal jurisdiction over a Texas corporation based on a single contract insuring the life of a California resident. Here, [defendant] asks us, in effect, to allow New York to exercise personal jurisdiction over a Missouri corporation based in part on a contract indemnifying New York residents against loss. However, the differences between the cases are even more significant than their resemblances. In *McGee,* the Supreme Court was concerned with 'an activity that the State treats as exceptional and subjects to special regulation.' *Hanson v Denckla, supra,* at 252, 78 S.Ct. at 1239. Moreover, the Supreme Court emphasized the fact that because many life insurance claims are small or moderate, 'individual claimants frequently could not afford the cost of bringing an action in a foreign forum —thus in effect making the company judgment proof.' *McGee v International Life Ins. Co., supra,* at 223, 78 S.Ct. at 201. Neither of these remarks would seem to apply to contracts of indemnity against patent infringement suits. Accordingly, while we do not by any means regard these contacts as irrelevant to the question of personal jurisdiction, we hold that something more is needed to sustain the service of process on Hammons in Missouri." 344 F2d at 588.

The *Agrashell* rationale seems applicable to the instant facts.

Furthermore, this Court's decision in *Kiefer v May,* 46 Mich App 566; 208 NW2d 539 (1973), which suggests that in personam jurisdiction is properly found when the telephone and mails are utilized to consummate a contract, is also distinguishable. In *Kiefer, supra,* defendant, a resident of Arizona, purposely elicited business opportunities through a national advertising campaign for

the sale of a 1931 Cadillac. The defendant in *Kiefer* was also subject to possible tort liability, aside from breach of contract. See *Norton v Local Loan,* 251 NW2d 520 (Iowa, 1977), *cited in Aaron Ferer & Sons Co v Atlas Scrap Iron & Metal Co,* 558 F2d 450, 455, n 7 (CA 8, 1977).[1] See, generally, *Cole v Doe,* 77 Mich App 138, 142; 258 NW2d 165 (1977).

To gain personal jurisdiction over a party, the party must be involved in some purposeful activity within the state. *Hanson v Denckla,* 357 US 235; 78 S Ct 1228; 2 L Ed 2d 1283 (1958). The mere use of the telephone from out of state for consummating a contract cannot be considered as purposefully availing one's self of the privilege of conducting activities *within* the forum state. *Agrashell Inc v Bernard Sirotta Co, supra, Arthur, Ross & Peters*

---

[1] "While no one of these factors is alone determinative, there is lacking in these cases any contact between an appellee corporation and the State of Nebraska sufficient to satisfy due process. The letters and telephone calls in this purely commercial setting did not supply the necessary minimal contact. *See Benjamin v. Western Boat Building Corp.,* 472 F.2d 723, 729–30 (5th Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); *Hamilton Brothers, Inc. v. Peterson,* 445 F.2d 1334, 1336 (5th Cir. 1971); *Smith v Piper Aircraft Corp.,* 425 F.2d 823, 825 (5th Cir. 1970); *Scheidt v. Young,* 389 F.2d 58, 60 (3d Cir. 1968); *Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583, 587 (2d Cir. 1965). *See also Arthur, Ross & Peters v. Housing, Inc.,* 508 F.2d 562, 564–65 (5th Cir. 1975); *American Steel, Inc. v. Cascade Steel Rolling Mills, Inc.,* 425 F.Supp. 301, 303 (S.D.Tex. 1975), *aff'd,* 548 F.2d 620 (5th Cir. 1977).7" (Footnote omitted.)

---

"7. The recent decision in *Norton v. Local Loan,* 251 N.W.2d 520 (Iowa 1977), to which appellant directed our attention subsequent to oral argument, is readily distinguishable. There, in the context of a tort suit, the Iowa Supreme Court held that a telephone call from the defendant's agent in Nebraska to the plaintiff in Iowa constituted 'conduct in [the] state' sufficient for Iowa to exercise personal jurisdiction over the defendant. Not only did the cause of action and the damages alleged arise directly from the telephone call, but tort cases involve interests of the state not present in contract cases. *See Fulghum Industries, Inc. v. Walterboro Forest Products, Inc.,* 477 F.2d 910, 912 (5th Cir. 1973). Nebraska's long-arm statute also provides for jurisdictional differences between tort and contract actions. See Neb. Rev. Stat. § 25-536, *supra* note 4."

*v Housing, Inc,* 508 F2d 562 (CA 5, 1975). The telephone is a quick, convenient means to consummate a bargain without having to travel to another state. Modern communication as a means of facilitating commerce should not be hindered by an automatic submission to the personal jurisdiction of a state to which the communication has been directed.

I would hold, in accordance with a number of other jurisdictions, that the mere use of the telephone is not sufficient to give personal jurisdiction over a party in a lawsuit. See *Aaron Ferer & Sons Co v Diversified Metals Corp,* 564 F2d 1211 (CA 8, 1977), *Aaron Ferer & Sons Co v Atlas Scrap Iron & Metal Co, supra, Peterson v Crown Financial Corp,* 435 F Supp 901 (Neb, 1977), *Arthur, Ross & Peters v Housing, Inc, supra, Agrashell, Inc v Bernard Sirotta Co, supra, American Steel, Inc v Cascade Steel Rolling Mills, Inc,* 425 F Supp 301 (SD Tex, 1975), *Hamilton Brothers, Inc v Peterson,* 445 F2d 1334 (CA 5, 1971). See, generally, Anno: *Construction and Application, as to Isolated Acts or Transactions, of State Statutes or Rules of Court Predicating In Personam Jurisdiction Over Nonresidents or Foreign Corporations Upon the Doing of an Act, or Upon Doing or Transacting Business or "Any" Business, Within the State,* 27 ALR3d 397, §§ 8, 9[c], 10, 17[b, c], 21[b], 23, 29, 34, 35, pp 437–440, 449–457, 471–492, 508–512, 517–520, 542–544, 554–557 (jurisdiction over nonresident, telephone calls into state, effect).

I concur in the result reached by the majority only because the loan agreement and the promissory note provide that the place of payment was at plaintiff's home in Detroit, Michigan. I agree that this factor, in the context of this entire transaction, constitutes a sufficient minimum contact to confer jurisdiction over the defendants.