**FIRST NATIONAL MONETARY CORPORATION, a Michigan Corporation, Plaintiff,**

v.

**Thomas C. CHESNEY and Dorothy A. Chesney, jointly and severally, Defendants.**

**Civ. A. No. 79–74206.**

United States District Court, E. D. Michigan, S. D.

May 22, 1980.

Edward R. Schonberg, Simon, Deitch, Siefman & Tucker, Southfield, Mich., for plaintiff.

Robert S. Krause, Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This diversity case, a breach of contract action, is before the court on defendants' motions to dismiss for lack of personal jurisdiction, for lack of subject matter jurisdiction, and for failure to state a cause of action upon which relief can be granted. In the alternative, defendants move for an order transferring this case to a California district court, or for an order compelling arbitration. For the reasons set forth below, defendants' motion to dismiss for lack of personal jurisdiction is granted. It is therefore unnecessary to reach the issues presented by the remaining motions.

In February of 1979, Thomas and Dorothy Chesney, California citizens, read an advertisement in the *Wall Street Journal* pertaining to the services of the First National Monetary Corporation (FNMC), plaintiff. By affidavit, defendants maintain that services advertised pertained to the Irvine, California office of FNMC. Plaintiff states by affidavit that the ad contained only the Michigan address of FNMC. It is undisputed that FNMC is a Michigan corporation which has a branch office in Irvine, California, staffed with an Account Executive. Defendants contacted the Irvine office on March 22, 1979, for the purpose of establishing an account with FNMC to engage in commodity futures trading transactions. On this date, defendants placed their first order with FNMC. Approximately one week later, defendants executed the FNMC account agreement in California. Pursuant to the instructions of the Account Executive, defendants mailed the executed agreement to FNMC's Southfield, Michigan address.

In the following six months, defendants engaged in approximately 40 commodities transactions. Eight of these transactions took place in defendants' Silver Short Forward Account. Plaintiff's complaint alleges that as a result of the transactions conducted in this account, there is a balance of $18,428.59 due and owing plaintiff.

During the six months in which defendants engaged in commodities transactions with FNMC, they discussed all of their orders and business with the Account Executive in California. At no time did defendants discuss their account with the Michigan office, by telephone or otherwise. They did, however, make seven payments on their accounts by mailing checks to the Michigan office. This was done pursuant to the instructions of their Account Executive.

Defendants initiated all transactions on their accounts by contacting the California Account Executive. He, in turn, confirmed the transactions with defendants by placing telephone calls to them and placed defendants' orders with the Michigan office. Plaintiff's unrefuted affidavit states that all orders were accepted in Michigan, and that the price of the commodities was determined by the Michigan office. Moreover, defendants' account was opened and maintained in Michigan. In addition, all transaction statements sent to defendants showed only the Michigan address of FNMC.

The Account Agreement which governed the relationship of the parties in this case has two provisions relevant to the determination of this motion. First, the agreement states in paragraph 12(a) that it is not binding until accepted and approved by an authorized officer in Michigan and that the defendants acknowledge that acceptance in Michigan constitutes the making of a contract in Michigan; and, second, the same paragraph recites that the defendants agree to submit to the jurisdiction of Michigan courts with respect to claims arising out of the agreement.

Defendants' motion to dismiss raises three questions. First, it must be determined whether Michigan's long-arm statute, M.C.L.A. § 600.705, is broad enough in its terms to confer jurisdiction over defendants. Second, it must also be determined whether the exercise of jurisdiction would be constitutionally permissible. Finally, assuming that jurisdiction cannot be constitutionally exercised under the long-arm statute, it must be determined whether the "consent to jurisdiction" clause in the Account Agreement operates to confer jurisdiction over the defendants pursuant to Michigan's statute relating to agreements of this type, M.C.L.A. § 600.745.

## LONG–ARM STATUTE

Plaintiff maintains that jurisdiction over defendants exists pursuant to M.C.L.A. § 600.705(1), which provides:

The existence of any of the following relationships between an individual ... and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual ... arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

\* \* \* \* \* \*

In construing the language of subdivision (1) quoted above, the Michigan Supreme Court defined the word "any" as meaning "just what it says. It includes 'each' and 'every.' It comprehends 'the slightest.' " *Sifers v. Horen*, 385 Mich. 195, 199, 188 N.W.2d 623 (1971). This same case has been read as extending the reach of Michigan's long-arm statute to be coextensive with the broadest grant of jurisdiction consistent with the constitutional requirements of due process. *Microelectronic Systems Corp. of Am. v. Bomberger's*, 434 F.Supp. 168, 170 (E.D.Mich.1977); *Parish v. Mertes*, 84 Mich.App. 336, 269 N.W.2d 591 (1978); *Stan Sax Corp. v. Siefen Compounds, Inc.*, 68 Mich.App. 768, 243 N.W.2d 724 (1976), lv. to app.den. But see, *Hapner v. Rolf Brauchli, Inc.*, 404 Mich. 160, 168, 273 N.W.2d 822 (1978), wherein Justice Levin expressed his disagreement with that interpretation, noting that Michigan's statute does not explicitly provide for jurisdiction coextensive with that permissible under due process, and implying that the reach of Michigan's long arm may be shorter than that allowable under due process.

■ The outermost bounds of the exercise of personal jurisdiction under Michigan's long-arm statute are thus set by the constitutional requirements of due process. As the discussion below demonstrates, however, jurisdiction cannot constitutionally be exercised over the defendants in this case.

## DUE PROCESS

■ The due process requirements established by the Supreme Court's landmark cases are well known. The defendants must have "certain minimum contacts" with the forum such that maintenance of the suit here does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1954). Moreover, the defendants must have purposefully availed themselves of the privilege of conducting activities within Michigan. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Most recently, the Supreme Court has stated

> [T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Of course, it is essential in each case to examine the nature and quality of the defendants' contacts with the forum, in order to determine whether the tests set forth above are met. In *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972), the court utilized a three-fold mode of analysis for long-arm jurisdictional questions. Applying that analysis here, it is clear that defendants' motion to dismiss must be granted.

*In-Flight's* first test requires that plaintiff demonstrate that defendants purposefully availed themselves of the privilege of acting in the forum state. The court further stated that the making of a substantial business contract with a citizen of the forum is sufficient to meet this test, although this alone is not enough to establish jurisdiction. In this case, defendants and plaintiff entered into a commodities trading agreement pursuant to which many transactions were consummated. Accordingly, defendants may be said to have purposefully availed themselves of the privilege of acting in Michigan. *In-Flight, supra*, at 227, note 13.

*In-Flight's* second test requires that the cause of action arise out of defendants' activities in the forum. *In-Flight, supra*, at 226. This test is clearly met by the facts of this case. Here, plaintiff is suing for sums allegedly due under the very agreement and transactions thereunder which comprise defendants' contacts with Michigan.

Finally, *In-Flight* requires that the acts of the defendants have a sufficiently substantial connection with Michigan to make the exercise of jurisdiction reasonable. *Id.* Reasonableness, in turn, is determined with reference to a number of factors. According to *In-Flight*, the forum's interest in the controversy must be considered. However, neither the state's interest in providing a forum for its residents nor its interest in applying its own law to the controversy is alone sufficient to make the exercise of jurisdiction reasonable. *World-Wide Volkswagen, supra*, 444 U.S. at 297, 100 S.Ct. at 567.

Another factor bearing on reasonableness concerns whether any unfair surprise on the part of the defendants results from the exercise of jurisdiction. *In-Flight, supra*, at 233. This, of course, is related to the requirement of foreseeability stated in *World-Wide Volkswagen* and quoted above. The facts in this case demonstrate that this factor weighs heavily in defendants' favor. Here, defendants responded to an advertisement of plaintiff's services, and contacted plaintiff's California office to place their orders. They executed the Account Agreement in California, and had numerous telephone conversations with the Account Executive in California. While they mailed the executed agreement and several payments to plaintiff's home office in Michigan, they did not have any conversations with plaintiff's officers in Michigan, nor did

they place any phone calls to the Michigan office.

The relationship between plaintiff and defendants in this case parallels the relationship most American consumers have with nationwide companies which sell, for example, gasoline, or household goods. A consumer who applies for a credit card from a major oil company and then uses that credit card to purchase gas for his car at his corner station would not expect to have to answer for his indebtedness to the company in a distant state. This would be so even if he had previously sent payments directly to the company's home office in that state. Likewise, in this case, defendants contacted and dealt with only plaintiff's California agent; by virtue of making certain mailings into Michigan, they cannot be said to have engaged in such conduct that they reasonably should have anticipated having to defend in this state.

Another indicia of a defendant's expectation that he may be called upon to defend in a foreign state is found in the extent of that defendant's interstate contacts in general. *In-Flight, supra,* at 234.

> The existence of substantial interstate business in general cannot substitute for some direct contacts with the forum state under the first test [requiring the purposeful availment of the privilege of acting in the forum state], but where such direct contact consists primarily of the entering of a contract with a resident of the forum state by the nonresident defendant the general interstate involvement of the defendant is suggestive of the latter's expectation that it may be involved in litigation far from its home base. *Id.*

In this case, the defendants are individuals, husband and wife, who have not been shown to have engaged in any interstate transactions other than the contract entered into with the plaintiff. They are not a business which regularly engages in interstate transactions or which has agents in other states. Rather, they are individual residents of a far distant state; even the contract entered into with plaintiff was ex-ecuted in their home office, and the result of their contact with plaintiff's California agent, Thus, they are "far more likely to be unprepared to deal with out of state litigation than an individual or corporation whose business frequently involves him or it in interstate transactions." *In-Flight, supra,* at 234.

Related to the idea of unfair surprise is the distinction drawn in *In-Flight* between active and passive buyers. *In-Flight, supra,* at 233. According to the court, it would not be unfair to exercise jurisdiction over a nonresident buyer who enters into a contract of sale with a resident seller, if that buyer, e. g., vigorously negotiates contract terms or inspects production facilities. Where, however, the nonresident buyer is one who places an order and accepts the seller's price and terms, the circumstances are generally such that the exercise of jurisdiction over this buyer would be unfair. In this case, the price of each commodity ordered or sold was determined by plaintiff, Michael King affidavit, paragraphs 5 and 12, and there is no evidence from which the court could conclude that defendants had any say in the terms of the Account Agreement. The agreement is a standard form, three page printed contract with no notations as to additional or deleted terms. Thus, defendants fit the mold of passive customers of plaintiff.

Unfairness in the exercise of jurisdiction over a nonresident is also the result where that defendant is financially unprepared to defend in a distant state. *In-Flight, supra,* at 234. *In-Flight,* however, refers to financial difficulties of a magnitude that leads to the acceptance of a default judgment. The record in this case does not reflect whether such severe financial constraints would be experienced by defendants, although their approximate net worth was listed on the Account Agreement as $100,000.00, with an annual income of more than $20,000 and less than $50,000. It is more likely, however, that such difficulty would be experienced by individuals than by a business which has an appreciable volume of activity outside of its home state.

Finally, *In-Flight* instructs that the nature and quantity of a defendant's physical contacts with the forum be considered. While a letter or phone call may be indicative of substantial involvement with the forum in a given situation, it must be borne in mind that physical contacts are relevant "because they provide a clue to the significance attached by the defendant to the activities occurring within the forum—and thus a clue to his expectations. *In-Flight, supra*, at 235. In this case, defendants' major and personal contacts were with the plaintiff's California agent. The only physical contacts that defendants had with Michigan were the mailings into this state of their executed Account Agreement and several payments. Even these mailings were done pursuant to the instructions of the California Account Executive. As noted above, these mailings are insufficient to indicate defendants' expectation that they would be compelled to litigate in Michigan.

█ In sum, this court agrees with plaintiff that defendants' contact with Michigan must be measured "qualitatively," not "quantitatively." *Hadad v. Lewis*, 382 F.Supp. 1365, 1371 (E.D.Mich.1974). The analysis set forth above does precisely that. The facts in this case demonstrate that plaintiff sought the business of individuals from California, and that it established a Regional Office in California to handle the business of its outstate clients. Defendants responded to plaintiff's solicitation by contacting its Regional Office. The parties entered into one contract pursuant to which approximately 40 transactions were consummated. All personal and direct communications with plaintiff as an entity were with plaintiff's California agent. The only physical contact defendants had with Michigan were several mailings, and these were made pursuant to the California Account Executive's instructions. Under these circumstances, defendants' contacts with Michigan are simply insufficient to make the exercise of jurisdiction over the defendants reasonable. *In-Flight, supra*, at 226; *World-Wide Volkswagen, supra*, 444 U.S. at 297, 100 S.Ct. at 567.

## CONTRACT TERM INVOLVING CONSENT TO JURISDICTION

Plaintiff also asserts, however, that jurisdiction over the defendants can be premised on paragraph 12(a) of the Account Agreement whereby the defendants agreed "to submit to the jurisdiction of the courts in the state of Michigan with respect to claims arising out of this Agreement ..." The enforceability of this contract term whereby defendants consented to jurisdiction in Michigan is governed by M.C.L.A. § 600.-745:

(1) As used in this section, "state" means any foreign nation, and any state, district, commonwealth, territory, or insular possession of the United States.

(2) If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur:

(a) The court has power under the law of this state to entertain the action.

(b) This state is a reasonably convenient place for the trial of the action.

(c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.

(d) The defendant is served with process as provided by court rules.

(3) If the parties agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court shall dismiss or stay the action, as appropriate, unless any of the following occur:

(a) The court is required by statute to entertain the action.

(b) The plaintiff cannot secure effective relief in the other state for reasons other than delay in bringing the action.

(c) The other state would be a substantially less convenient place for the trial of the action than this state.

(d) The agreement as to the place of the action is obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.

(e) It would for some other reason be unfair or unreasonable to enforce the agreement.

This statute has not been construed by a Michigan court, and it is therefore incumbent on this court to construe the statute in a manner most consistent with the approach Michigan courts would be likely to take. The court is not totally without guidance in its efforts, however, as there are two sources which serve as aids to construction. The first source is the recommendation made to the Michigan Law Revision Commission by Professor James Martin of the University of Michigan Law School. The second source is the official comments to the Model Choice of Forum Act (enacted by Michigan as § 600.745), by the National Conference of Commissioners on Uniform State Laws.

At the outset, it should be noted that subdivision (2) of § 600.745 provides that jurisdiction may be exercised only if all four of the conditions enumerated in subdivisions (a) through (d) are met. In this case, it is clear that both subdivisions (a) and (d) are satisfied. Accordingly, this discussion will be limited to subdivisions (b) and (c).

Subdivision (b) of § 600.745(2) provides that jurisdiction may be exercised over a nonresident defendant only if this state is a reasonably convenient place for trial. In his recommendation to Michigan Law Revision Commission that the Model Choice of Forum Act be adopted, Professor Martin noted the absence of explicit safeguards regarding consent-to-jurisdiction agreements in the then-current statutory jurisdiction provisions. "[T]he absence of a developed doctrine of *forum non conveniens* in Michigan might discourage the courts from reaching the result of [§ 600.745(2)(b)]." Michigan Law Revision Commission, The Annual Report, 60, 75 (1972).

Application of considerations relevant to *forum non conveniens* doctrine to aid in the construction of the meaning of "conve-

nient" as used in § 600.745(2)(b) does not require the conclusion that Michigan is an inconvenient forum, however. Indeed, it would appear that while requiring the defendants to litigate in Michigan would be burdensome on them, requiring the suit to be maintained in California, the only other reasonable forum for this litigation, may result in hardship on the plaintiff. Plaintiff states that all of its documentary proofs are located at its Michigan office, and that it intends to call 5 or 6 of its Michigan officers as witnesses, and only 1 or 2 of its California officers. Defendants, on the other hand, point to no witnesses other than themselves and FNMC personnel who may be inconvenienced by litigation of this matter in Michigan. The disparity in financial strength between the parties has a bearing on the convenience of the selected forum, of course, and this factor weighs heavily in defendants' favor. Nonetheless, the circumstances in this case are not such as to compel the conclusion that California is a more convenient forum.

Subdivision (c) of § 600.745(2) provides that jurisdiction may not be exercised if the defendants' agreement to jurisdiction was obtained by abuse of economic power or other unconscionable means. The intent of this language is indicated by the official comment to § 600.745(3)(d), which contains identical language:

A significant factor to be considered in determining whether there was an "abuse of economic power or other unconscionable means" is whether the choice of forum agreement was contained in an adhesion, or "take-it-or-leave-it," contract.

■ As noted above, the Account Agreement in this case is a printed, three page form contract with no notations as to additions or deletions to conform to defendants' particular circumstances. Defendants maintain that the "agreement" embodied in paragraph 12(a) was not reached by arm's length bargaining between persons of equal sophistication and experience. Where entities of equal bargaining power reach such an agreement, its terms should be enforced, provided the other requirements of the stat-

ute are met. Such is not the situation in this case. Indeed, the individual defendants in this case appear to be precisely the type of persons the statute was designed to protect.

In the credit card case discussed earlier in this opinion, the public would be shocked if, in response to a clause in the agreement to obtain a credit card which submitted the card holder to the jurisdiction of a state halfway across the country, a court were to hold that the credit card company could force the card holder to defend in that state in a suit for amounts due. Such a result would be inconceivable and an abuse of economic power. This court believes that it would be unconscionable and an abuse of economic power to enforce the terms of the agreement under the facts of this case. Here defendants' business was solicited by plaintiff in their home state, and defendants were provided the "convenience" of transacting their business with plaintiff's Regional Office. Nonetheless, an adhesion or "take it or leave it" clause in the printed agreement they signed requires that they travel to Michigan in order to defend plaintiff's claims. Under these circumstances, such an agreement will not be enforced by this court.

Michigan's statute requires that all four of its conditions be met in order for a court to exercise jurisdiction over these nonresidents. Because § 600.745(2)(c) has not been met, plaintiff may not claim the benefit of the statute.

It has been shown that long arm jurisdiction over defendants cannot be exercised in this case, and that the requirements of Michigan's statute governing the enforceability of defendants' consent to jurisdiction have not all been met. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is granted.

So ordered.